**EXHIBIT A**

Filed
D.C. Superior Court
12/21/2017 13:31PM
Clerk of the Court

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

## INFORMATION SHEET

Roger Rosendahl

vs

Stoel Rives, LLP et al

Case Number: **2017 CA 008490 B**

Date: 12/5/17

☐ One of the defendants is being sued in their official capacity.

Name (Please Print): Roger Rosendahl

Firm Name:

Telephone No.: 347-479-1013   Six digit Unified Bar No.:

Relationship to Lawsuit
☐ Attorney for Plaintiff
☒ Self (Pro Se)
☐ Other:

TYPE OF CASE: ☐ Non-Jury   ☐ 6 Person Jury   ☒ 12 Person Jury

Demand: $ 10,000,000   Other:

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____ Judge: _____ Calendar #: _____

Case No.: _____ Judge: _____ Calendar#: _____

---

NATURE OF SUIT:   (Check One Box Only)

### A. CONTRACTS

COLLECTION CASES

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☒ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
Over $25,000 Consent Denied
☐ 34 Insurance Subrogation
Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☒ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☒ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☒ 08 Fraud

☐ 09 Invasion of Privacy
☒ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE.   IF USED

CV-496/June 2015

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Roger Rosendahl            *Plaintiff*
1 Old Forge Road
Greenwich, CT 06830

CIVIL Action No.

### 2017 CA 008490 B

versus

Stoel Rives, LLP.
601 Thirteenth Street, N.W.
Suite 850N
Washington D.C. 20005

Mark Morford
Stoel Rives, LLP
760 SW 9th Avenue #3000
Portland, Oregon 97205

Bradley Tellam
Stoel Rives, LLP
760 SW 9th Avenue #3000
Portland, Oregon 97205

Andrew Moratzka
Stoel Rives, LLP
33 South 6th Street
Minneapolis, MN 55402

David Quinby
Stoel Rives, LLP
33 South 6th Street
Minneapolis, MN 55402

Gregory Jenner
Stoel Rives, LLP
601 Thirteenth Street, N.W.
Suite 850N
Washington D.C. 20005

            Defendants

## COMPLAINT

1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.

2. Plaintiff is an individual United States citizen residing at 1 Old Forge Road, Greenwich, CT 06830.

3. Defendant Stoel Rives, LLP (hereinafter "Stoel Rives" or "the Firm") is a limited liability partnership with offices in multiple jurisdictions, including Washington, D.C. at 601 Thirteenth Street, NW, Suite 850N, Washington, D.C. 20005 and San Francisco at 3 Embarcadero Center #1120, San Francisco, California 94133, and Portland Oregon at 760 SW 9th Avenue #3000, Portland, Oregon 97205.

4. From approximately April 2014 to December 31, 2017, Plaintiff was a partner and then Co-Head – Project Finance in the Washington, D.C. and San Francisco offices of defendant Stoel Rives.

5. Defendant Mark Morford is a partner and project site permitting specialist in the Portland Office of Stoel Rives at.

6. Defendant Bradley Tellam is Chief Executive or Chief Operating Officer of Stoel Rives resident in its Portland Office at 760 SW 9th Avenue #3000, Portland, Oregon 97205.

7. Defendant Andrew Moratzka is a partner and Head of the Energy Department of Stoel Rives in its Minneapolis Office at 33 South 6th Street, Minneapolis, MN 55402.

8. Defendant David Quinby is a partner and former Head of the Energy Department of Stoel Rives in its Minneapolis Office at 33 South 6th Street, Minneapolis, MN 55402.

9. Defendant Gregory Jenner is Managing Partner of Stoel Rives' Washington, D.C. Office at 601 Thirteenth Street, NW, Suite 850N, Washington, D.C. 20005.

## Age Discrimination

10. Defendants are in violation of applicable laws of the District of Columbia prohibiting discrimination on the basis of age.

11. Upon Plaintiff's joining the Firm in April 2014, no question Plaintiff was asked called for his age (73) and Plaintiff did not voluntarily disclose it to the Firm.

12. Plaintiff's disclosure many months later to Megan Siekkinen, the office assistant Plaintiff shared with the Washington, D.C. Office Managing Partner, occurred in the context of Plaintiff's application for Washington, D.C. transit reimbursement. Although she promised to keep Plaintiff's age secret, in order to protect against age discrimination, Megan disclosed Plaintiff's age to the Washington, D.C. Office Managing Partner.

13. Shortly thereafter, in a meeting in the San Francisco Office with each of Jon Wellinghoff, former Chairman of the Federal Energy Regulatory Commission, Plaintiff and Greg Jenner, Greg Jenner mocked both Plaintiff and Jon Wellinghoff by noting that he was "the youngest partner in the meeting."

14. Greg Jenner later mocked Plaintiff at the 2015 Washington, D.C. Office Christmas dinner by claiming "Roger knew Annette Funicello" from the 1950's "Mickey Mouse Club."

15. On account of Plaintiff's age, Greg Jenner later proposed to the Firm Plaintiff's change of status from "partner" to "partner emeritus."

16. Around the same time that the Firm undertook the actions set forth herein, it had instituted a "transition program" for older partners, but excluded Plaintiff from that program.

17. As explained further below, upon discovery of Plaintiff's age, the Firm increasingly excluded Plaintiff from key work that Plaintiff had developed for the Firm and, against both Firm protocols and its Engagement Agreement with a key client that Plaintiff was critical in developing, Northwest Innovation Works, reassigned Plaintiff's work, credit, and responsibility to younger partners, including work, credit, and responsibility for the largest series of project finance transactions in the Firm's history.

18. Following discovery of Plaintiff's age, the Firm excluded Plaintiff from client pitches (including pitches to clients whom Plaintiff had previously represented prior to joining the Firm), replaced Plaintiff on a key public presentation on a topic that Plaintiff had developed, and attempted to replace Plaintiff on prospectively successful pitches to a large foreign utility.

19. Following discovery of Plaintiff's age, the Firm otherwise isolated, disparaged, and harassed Plaintiff, creating an increasingly hostile work environment.

20. Plaintiff's outspoken objections to these actions culminated in Plaintiff's sudden termination, without notice, warning, or explanation of any kind, including denial of access to Plaintiff's personnel file.

21. On December 5, 2017, Plaintiff received an email from Andrew Moratzka summoning Plaintiff to a video conference "review" on December 6, 2017. Plaintiff's email inquiry to Robert Van Brocklin, the former Managing Partner of Stoel Rives concerning the nature of the "review" and Plaintiff's then "Integration Partner" was ignored, as were Plaintiff's previous requests for copies of Plaintiff's personnel file.

22. On December 6, 2017, Plaintiff appeared in the conference room of the Washington, D.C. Office for Plaintiff's "review" by Andrew Moratzka, with Gregory Jenner present. After asking Plaintiff "how was your Thanksgiving," Andrew Moratzka proceeded to advise Plaintiff, without reason or explanation of any kind (other than that this action was not appealable), that Plaintiff was being terminated and would be removed forthwith from the Firm's website.

23. Plaintiff's objection that removing Plaintiff from the Firm website would make it impossible to secure new employment was met by silence.

24. By its blindside termination without notice, warning, or explanation of any kind, the Firm intended to defund and otherwise put Plaintiff into emotional and financial turmoil that would make it impossible for Plaintiff to defend against the Firm action.

25. Defendants knew that without continued presence on the Firm website, it would be virtually impossible for Plaintiff to secure another position with a law firm and would likely be "career ending" (quote by Greg Jenner) action.

26. Defendants knew that sudden termination without notice or warning strongly suggests a strong presumption of significant wrongdoing that cannot be overcome by truthful explanations and that few, if any, law firms will not consider such termination presumptive disqualification from new employment.

27. Unknown to Plaintiff at the time and, in order to spread the word of Plaintiff's sudden termination, Defendants also reached out to inform both clients and to the one law firm, Andrews Kurth, that they knew was Plaintiff's most logical point of relocation and the one law firm they most feared might hire Plaintiff.

28. Approximately one and one half years earlier, the long-time associate that Plaintiff had brought with him to the Firm had left to return to New York and was a partner in Andrews Kurth, the Texas oil and gas specialist firm that Mark Morford had previously considered most likely to secure the project finance work from Northwest Innovation Works.

29. The Firm knew that Andrews Kurth would be a logical place for Plaintiff to relocate and surreptitiously undertook to destroy that option.

30. At the same time as the Firm was spreading the word of Plaintiff's termination, the Firm offered Plaintiff the fraudulent and illusory protection of keeping Plaintiff on the website for a short period in exchange for a full release of liability for their actions, including their actions in undermining Plaintiff's relocation itself.

<u>Intentional Infliction of Emotional Distress</u>

31. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

32. Following the termination meeting, Plaintiff returned to his office and immediately contacted a friend, Professor Robert Hillman at the University of California at Davis, who put Plaintiff in touch with an attorney at the Portland office of Holland and Knight.

33. Following Plaintiff's departure from his office, Plaintiff discovered that he had left his glasses and cell phone behind. Plaintiff's attempt to return to pick them up was blocked by a proclamation from the office security guard that Plaintiff had been banned from reentry. Plaintiff asked the security guard to call the Office Managing Partner, Greg Jenner, who refused to speak with Plaintiff. Eventually, a security guard escorted Plaintiff to the office to pick up his glasses and cell phone.

34. Through Plaintiff's prior conversations with Bob Van Brocklin and other communications within the Washington, D.C. Office, the Firm was aware of Plaintiff's wife's impending (December 8) brain surgery and the office assistant that Plaintiff shared with the Office Managing Partner had been requested to reserve a hotel in New York where Plaintiff and his wife would stay the night before the early morning brain surgery in New York.

35. Having learned of Plaintiff's impending termination and, unknown to Plaintiff, Plaintiff's office assistant declined to make the hotel reservation and Plaintiff and Plaintiff's wife found that the night before her early morning surgery on December 8, they had no hotel room reserved in New York.

36. The foregoing combination of events on eve of Plaintiff's wife's brain surgery was intended to, and did, intentionally inflict severe emotional stress on Plaintiff and Plaintiff's wife, sending Plaintiff's family into a tailspin of emotional and physical distress, including personal, reputational, professional, financial, and family damage from which, diligent efforts notwithstanding, they have still not recovered.

37. Plaintiff has had a long and distinguished professional career, including partnerships in major Wall Street law firms and recognition among both "Top Lawyers in Manhattan" and "Top Lawyers in California. Plaintiff has written multiple books and articles and has been a prominent speaker in multiple seminars, including lecturing at the University of Business and International Economics in Beijing, the Japanese Institute of International Business Law in Tokyo, and the Universities of Frankfurt, Cologne, and Heidelberg. He has been featured on the cover of the *Los Angeles Lawyer*, nationally interviewed on the *Financial News Network*, and quoted in multiple publications, including the *New York Times*, *Financial Times*, *Frankfurter Allgemeine*, *Bangkok Post*, *Manila Times*, *Houston*

*Chronicle*, and *Dow Jones*. Defendants' malicious efforts to end his career have imposed severe and debilitating emotional, physical, reputational, professional, financial, and family distress upon Plaintiff and his family.

38. Defendants' motivation for undertaking the aforementioned action was extreme hostility and animus toward Plaintiff, the source of which is clear from the written record, including animus and hostility that Plaintiff would not submit to bullying and intimidation, but objected to the Firm's reallocation and assignment of his work, credit, and responsibility to younger partners, all subject to confirmation in forthcoming requests for admissions, and included defunding Plaintiff's ability to mount any formal objections to the Firm's actions, given Plaintiff's now urgent priority of personal, emotional, physical, financial, and family survival.

### Conversion (Theft)

39. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

40. By reputation, practice, and financial success, Stoel Rives is a third-tier law firm primarily occupied with regional matters in the Pacific Northwest, but with a special expertise and reputation in the development phase of energy projects.

41. By contrast, Plaintiff's professional profile and reputation derives from his years of experience at the top end of the bar, including major Wall Street and national law firms, including specialized experience in sophisticated project finance and mergers and acquisitions for which Stoel Rives is not known.

42. Stoel Rives was aware of Plaintiff's exceptional expertise in areas that the Firm lacked in part on account of Plaintiff's representation of clients of the Firm who did not use Stoel Rives for complex project finance and mergers and acquisition matters, including, by way of example, Pico North (project finance), Nordex (project finance), SoCore (energy fund financing), and Beebe Community Property Wind Farm (M&A project sale to utility, Exelon).

43. Plaintiff's joining Stoel Rives thus represented a strategic opportunity to bring into the firm expertise that it lacked, including work for existing clients that it was not performing, and match that expertise with the Firm's development phase work for existing energy clients who did not use the Firm for more sophisticated (and financially rewarding) work.

44. Prior to Plaintiff's joining the Firm, the Firm Managing Partner, Bob Van Brocklin, asked Plaintiff to speak to another partner, Mark Morford, a project site permitting specialist, about a potential opportunity involving both project finance and Chinese clients, with which Plaintiff had special expertise. Plaintiff spoke with

Mark Morford for approximately an hour to advise him of various unique aspects of both project finance and China practice.

45. Shortly after joining the Firm, Plaintiff was asked to assist in approaching this very client, Northwest Innovation Works, a Chinese-based entity affiliated with the Chinese Academy of Sciences Holdings ("CASH"), the previous private equity sponsors of "Lenovo."

46. The Firm had previously been approached by Northwest Innovation Works to perform certain site permitting work in the States of Washington and Oregon, but, prior to Plaintiff's joining the Firm, that assignment had been terminated.

47. Northwest Innovation Works had then invited multiple firms, including each of K&L Gates and Andrews Kurth, to submit proposals for a much broader assignment, including, in addition to project site permitting, the full gamut of project financing to follow, by far the most lucrative component of the potential assignment.

48. With the assistance of his long-time associate from DLA Piper, George Pavlenishvili, whom Plaintiff had brought with him to Stoel Rives as a partner, Plaintiff prepared over a period of several months a comprehensive and innovative proposal for representation in connection with the project financing of each of the five (5) $2.5 billion projects expected to be undertaken by the client. Backed by a superior resume of large complex both project financings and representation of Chinese clients and an extensive Wall Street level pedigree, Plaintiff spoke and met with the client on multiple occasions to pitch the Firm's now substantially enhanced capabilities in project financing.

49. In the competitive pitch process, the Firm faced significant institutional superiority in requisite experience within both international firm, K&L Gates, and Texas oil & gas project specialists at Andrew's Kurth, who had worked on the large project (Cheniere) considered the likely structural model for the client's new projects. Mark Morford emailed a status assessment to Plaintiff and George Pavlenishvili worrying that the client would divide the work, allocating Washington permitting to K&L Gates, Oregon permitting to the Firm, and the plum project finance assignment to the Texas firm, Andrews & Kurth.

50. As it turned out, in the face of significant historical institutional superiority of experience and expertise of both K&L Gates and Andrews & Kurth (there may have been others), the Plaintiff's project finance presentation, experience, and profile prevailed and the Firm was asked to prepare a proposed form of Engagement Letter for its representation, including, in addition to resecuring permitting work from which it had been previously relieved, the full scope of the project and project

financing work for each of the project five (5) $2.5 billion projects that would pay to the Firm premiums on closing of approximately $6-7 million each.

51. Following the client's invitation to prepare an engagement proposal, Plaintiff and his former associate, George Pavlenishvili, drafted comprehensive language governing the project documents and project financing components of the pending assignment. In approximately September of 2014, the client and the Firm entered into a comprehensive engagement agreement (the "Engagement Agreement") providing for a combination of discounted billable rates matched by substantial closing premiums in the range of $6-7 million for each transaction.

52. Recognizing Plaintiff's role in the successful presentation to the client and his even more critical role in executing the complex steps and documents customary for transactions of this size and complexity, Plaintiff was named in the Engagement Agreement as the Firm partner responsible for managing and executing the project documents and project financing, by far the largest, fee intensive, and profitable component of the assignment. Permitting, handled by Mark Morford, was handled separately in the Engagement Agreement.

53. Recognizing Plaintiff's critical role in the origination of the project financing assignment, Mark Morford emailed a proposal that the "origination credit" granted by the Firm for compensation purposes be allocated 1/3 to him and 2/3 to Plaintiff (and the associate he had brought with him). Similarly, Plaintiff was to be assigned the role of "responsible partner" for the project financing work.

54. Shortly following the client's decision to engage the Firm for this assignment, Mark Morford sent out a widely-circulated email within the Firm announcing this assignment, the largest series of project finance transactions in the Firm's history, and crediting Plaintiff's critical contribution in acknowledging that the Firm was getting return on its investment in Plaintiff's project finance experience and profile.

55. While Mark Morford pursued the project permits, Plaintiff established immediate credibility with the client's financial advisor, confirming the Firm's capability to execute an extraordinarily large and complex transaction for which the Firm was not known, by arranging over a period of years multiple meetings and discussions with the top providers of project financing in New York City, pursued discussions, negotiations, and preliminary documentation with a key private equity sponsor, Stonepeak Capital, and pursued meetings and discussions with the project financing arm of the United States Department of Energy and preliminary term sheet negotiations of projected Department of Energy debt financing of the initial client project.

56. Mark Morford refused to bill any of this time to the client or to accrue the time for future billing, with the result that Plaintiff was given no or almost no billable or accrued time credit for Plaintiff's work on behalf of the client.

57. While Plaintiff was tasked with ensuring delivery of meetings and discussions with leading providers of project financing and otherwise confirming to the client the Firm's knowledge and experience with customary components of a large project financing, Mark Morford made sure that virtually none of Plaintiff's time in this role was reflected in any origination or responsible partner credit.

58. Notwithstanding Plaintiff's role as designated in both the Engagement Agreement with the client and internal allocation of credit and responsibility as partner responsible for preparation and execution of all project documents and project financing, which financings are based upon project documents, Mark Morford purported to reallocate and reassign responsibility for project agreements to other partners younger than Plaintiff. In many cases, such partners turned to Plaintiff for models and example of the agreements they had been asked to prepare.

59. Over Plaintiff's objections, Mark Morford explained to Plaintiff the political benefits of allocating work to another powerful partner in the Firm's Portland Office, Alan Merkle, a former Chairman of the Firm. When Plaintiff reviewed that work — a key technology license agreement — Plaintiff noted multiple issues, omissions, and inconsistencies in approach and, given only a few hours to comment, wrote an email summary of concerns.

60. In the conference call with the client to discuss this draft, Plaintiff's email summary was the basis of much of the discussion, led by Alan Merkle as the attorney purportedly drafting the agreement, who repeated the points that had been fed to him in Plaintiff's email. The consensus of the meeting was that the multiple issues should be addressed in the next key agreement, an Engineering, Procurement and Construction Agreement "EPC Agreement").

61. When the time came to prepare the EPC Agreement, a key agreement for any project financing and one that requires extensive preparation in anticipation of the project financing, Mark Morford suggested in emails that Plaintiff should be prepared to proceed. In the event, however, and over Plaintiff's more outspoken objections, he asked the same former Firm Chairman to prepare the EPC Agreement as well.

62. When the former Firm Chairman then asked Plaintiff to take a look at his draft, Plaintiff gave him an extensive outline of issues and omissions. He later asked for further comments and, in response, Plaintiff essentially redrafted the EPC Agreement to match contemporary standards sufficient to enable the Firm, without embarrassment, to submit to a financing source for their review. At the same time,

Plaintiff emailed the former Firm Managing Partner, Bob Van Brocklin, to caution him that the Firm should not submit the EPC Agreement to any credible financing source in the form initially submitted to Plaintiff, but in Plaintiff's revised form. He agreed, replying "Amen."

63. Sometime in approximately 2017, Mark Morford informed Plaintiff that he would not bill the substantial time that Plaintiff had incurred on the EPC Agreement, notwithstanding that Plaintiff's work had been expressly requested by the other partner who had drafted it. He further stated that he would report that to the new Firm Managing Partner that Plaintiff's time was unauthorized, notwithstanding both that it had been expressly requested in writing and was within the scope of Plaintiff's responsibility under the Engagement Agreement with the client.

64. Also in 2017, Mark Morford sent Plaintiff an email asking that Plaintiff lie to Northwest Innovation Works by telling the client that work that Plaintiff had done was done as well by another partner, Gary Barnum, who had done little or nothing of that work. Plaintiff objected to being asked to lie.

65. Mark Morford's intention in asking Plaintiff to lie to the client was to position Plaintiff to be replaced by the other partner.

66. As a result of Mark Morford's unauthorized misappropriation and reassignment of work, credit, and responsibility expressed allocated to Plaintiff by both agreement with the client and internal documented protocols, Plaintiff's credit for origination and responsibility was effectively reduced to zero in favor of matching credit allocations to younger partners.

67. Notwithstanding Firm protocols granting Plaintiff origination and responsibility for the Northwest Innovation Project, the initial Engagement Agreement with Northwest Innovation designating Plaintiff as responsible for each of project documents and project financing for the client, and Plaintiff's diligent, albeit unbilled, execution that confirmed the Firm's role in the project, in approximately September 2017, Mark Morford told Plaintiff that he was being replaced on the Northwest Innovation Project by the very partner that Morford had asked Plaintiff to lie about.

68. With Plaintiff's purported replacement, the incremental misappropriation and reallocation of work, credit, and responsibility that Plaintiff was critical in developing was now complete. Plaintiff's outspoken objections to this action, including on the basis of client interest and fiduciary responsibility and consistency with Firm internal rules and protocols culminated in Plaintiff's sudden and summary termination.

69. A collateral consequence of misappropriating and redistributing Plaintiff's 2/3 origination credit, hours, and execution responsibility was the Firm's pretextual claim and that Plaintiff did not have them. Plaintiff had landed a "whale" and the Firm took it and then asked "where is your whale?"

## Fraud

70. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

71. In order to persuade Plaintiff to continue to position Northwest Innovation Works for the Firm's complete reallocation of Plaintiff's designated work, credit, origination, and responsibility for the largest series of project finance transactions in the Firm's history and complete reassignment and replacement of Plaintiff by younger partners, the Firm fraudulently induced Plaintiff to play along with its actions until the Firm's intentions became completely clear.

72. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

73. In approximately July of 2016, Bob Van Brocklin, the then Firm Managing Partner, contacted Plaintiff to request a meeting. After a series of meetings in multiple locations, the Firm Managing Partner convinced Plaintiff to enter into an employment agreement without any stated term under which the Managing Partner would become Plaintiff's "Integration Partner" and promised to provide to Plaintiff a plan for Plaintiff's integration that would ensure Plaintiff's continuing role in the Northwest Innovation Project and otherwise within the Firm.

74. Rejecting the proposed new title, "Partner Emeritus," Plaintiff was designated "Co-Head – Project Finance" (there being no other Co-Head), consistent with Plaintiff's role in landing and executing the largest series of project finance transactions in the Firm's history.

75. In fact, the Firm never intended to implement any kind of "integration" and, despite Plaintiff's repeated inquiries as to when the plan promised by the Managing Partner would appear, incremental exclusion from Northwest Innovation continued unabated up to the ultimate proclamation of replacement on the project and, in the face of Plaintiff's objections, summary termination.

76. Although Mark Morford agreed in accordance with customary Firm protocol to share with Plaintiff origination credit for the key Northwest Innovation Matter 1/3 to him and 2/3 to Plaintiff (and his then associate), in fact, Plaintiff received zero origination credit. Plaintiff was similarly responsible for project documents and project finance in both internal documents and the initial Engagement Agreement

with Northwest Innovation Works, the largest and most lucrative component of the client assignment. In fact, behind Plaintiff's back or over Plaintiff's objections, Mark Morford incrementally misappropriated the work, credit, and responsibility of Plaintiff and reallocated and reassigned it to younger partners.

77. Inasmuch as Mark Morford was resident in the Firm's Portland (main) office and Plaintiff was relegated to a remote three-lawyer outpost, Mark Morford could engineer his deception with little outside interference.

78. Mark Morford ultimately announced, both internally and to Northwest Innovation Works, Plaintiff's replacement by a younger attorney who had played no role whatsoever in either landing the client or executing the assignment.

79. Without Plaintiff's knowledge or consent, Mark Morford negotiated a new engagement agreement with Northwest Innovation Works in which Plaintiff's initially designated roles and responsibilities were expressly excluded.

80. Following termination, the Firm offered an illusory settlement proposal to publicly maintain Plaintiff's status with the Firm even as, without Plaintiff's knowledge, the Firm had reached out to both clients and Plaintiff's prime law firm relocation prospect to directly undermine and sabotage Plaintiff's ability to relocate. Defendants fully expected that liability for their actions would be released when Plaintiff, under extreme emotional and financial duress, signed a full release of liability (which Plaintiff would not sign).

### Breach of Contract

81. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

82. The Firm in fact did not fulfill the intended purpose of the aforementioned employment agreement, despite repeated entreaties to do so, breached that agreement in material respects, and even executed Plaintiff's summary termination prior to the end of the initial year under the contract.

83. On account of Plaintiff's key role in both origination and execution of the assignment granted to the Firm in the initial Engagement Agreement with Northwest Innovation Works, Plaintiff was a third-party beneficiary of that Agreement with an independent interest in maintaining the role that Plaintiff had been assigned and for which Plaintiff had been granted internal origination and responsibility credit. Preemptively removing Plaintiff from that role and responsibility and, without Plaintiff's consent or knowledge, negotiating a replacement agreement from which Plaintiff was excluded, was a breach of Plaintiff's third-party beneficiary rights under that initial Engagement Agreement.

Breach of Implied Covenant of Good Faith and Fair Dealing

84. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

85. By its actions as set forth above, the Firm acted in bad faith in dealing with Plaintiff over a wide spectrum, including taking work developed by Plaintiff and claiming pretextual excuse for its actions that Plaintiff no longer had the very work the Firm had taken.

86. The Employment Agreement that the Firm never intended to perform was in fact carefully crafted by Firm employment lawyers (Plaintiff is a corporate lawyer) to set Plaintiff up to be forced out.

87. The Firm engaged in bad faith in fraudulently negotiating an illusory promise to assist Plaintiff's relocation at the same time as the Firm was reaching out to Plaintiff's prime relocation target to sabotage Plaintiff's prospective relocation.

88. Contrary to applicable Federal law, the Firm refused to allow Plaintiff the requisite 21 days to consider a settlement offer allowing Plaintiff to remain on the Firm's website for a brief period, instead demanding that Plaintiff, facing extreme emotional, physical, financial, and family distress, immediate execute the release.

Defamation

89. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

90. Motivated by malice, animus and professional and proprietary envy, the Firm professionally disparaged and defamed Plaintiff with a key client that Plaintiff had been instrumental in bringing into the Firm, both before and after Plaintiff had departed the Firm, as well as a key client prospect as well as with a law firm or law firms that the Firm knew were Plaintiff's prime relocation prospects.

91. Plaintiff has had a long and distinguished professional career, including partnerships in major Wall Street law firms and recognition among both "Top Lawyers in Manhattan" and "Top Lawyers in California. Plaintiff has written multiple books and articles and has been a prominent speaker in multiple seminars, including lecturing at the University of Business and International Economics in Beijing, the Japanese Institute of International Business Law in Tokyo, and the Universities of Frankfurt, Cologne, and Heidelberg. He has been featured on the cover of the *Los Angeles Lawyer*, nationally interviewed on the *Financial News Network*, and quoted in multiple publications, including the *New York Times*,

*Financial Times, Frankfurter Allgemeine, Bangkok Post, Manila Times, Houston Chronicle,* and *Dow Jones.* Defendants' malicious efforts to disparage Plaintiff's national reputation and end his professional career have done debilitating damage to Plaintiff's reputation and professional standing and his ability to support himself and his family financially.

## Extortion

92. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

93. Mark Morford and other partners expressly threatened on multiple occasions Plaintiff's professional and financial standing within the Firm, including a command appearance in a meeting with both Mark Morford and Andrew Moratzka, the Head of the Energy Department, if Plaintiff did not quietly acquiesce in having Plaintiff's work, responsibility, role, and credit misappropriated and delivered to younger partners.

## Hostile Workplace

94. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

95. The Firm promoted and failed to protect Plaintiff from an increasingly hostile work environment that isolated and punished Plaintiff within the Firm.

96. In response to a playfully provocative comment intended to break the ice in a law firm reception conversation ("don't you know that you're too nice to be a litigator"), the Firm supported a female partner who later publicly abused Plaintiff for Plaintiff's comments, "especially coming from an older white male," claiming that even joking was not allowed, even as the very same female lawyer, in a full meeting of most of the Firm's lawyers, had publicly referred to her "tits" as the only reason anyone talked to her.

97. Without Plaintiff's knowledge, notice, or due process of any kind, the Firm instituted a behind-the-scenes Soviet-style "Inquisition," wholly fabricated and manufactured events that had not occurred at the aforesaid Firm reception, and then proclaimed Plaintiff a drunken bigot while announcing Plaintiff's punishment (see Plaintiff's letter to Brad Tellam attached).

98. In another key example, Plaintiff's significant work in support of Plaintiff's colleague, George Pavlenishvili, before he left the Firm, the Firm would not allow Plaintiff to pitch the client, Sunpower, following George's departure, preferring

instead to let Sunpower work go to another firm than allow Plaintiff the opportunity to follow-up on the good work that Plaintiff had done.

## Retaliation

99. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

100. Plaintiff's consistent position that, by deceptively and incrementally allocating to younger partners the work and roles for which Plaintiff had been expressly designated in writing in each of the key client Engagement Agreement with Northwest Innovation Works, the Firm was acting against the interests of the client, the initial Engagement Agreement, client and internal fiduciary responsibilities, and the Firm's own interest was not simply ignored, but the source of retaliatory malice.

101. Mark Morford not only asked me to lie, but lied to the Firm's newly-appointed Managing Partner in denying, among other matters, the existence of the initial Engagement Letter, the process of securing Northwest Innovation Works as a client, and Plaintiff's role in that process. The reaction to Plaintiff's disclosing the truth was a doubling down on the false narrative and retaliatory punishment of Plaintiff for refusing to bend to bullying and intimidation.

102. Without Plaintiff's knowledge or consent, Andrew Moratzka reviewed Plaintiff's private correspondence, which disclosed Plaintiff's marshalling of documents to support Plaintiff's position. Rather than allow Plaintiff to continue to support his position in opposition to a false narrative, including direct lies to the then Firm Managing Partner, the Firm undertook a preemptive retaliation that would place Plaintiff under extreme emotional, professional, physical, financial, and family distress, preventing Plaintiff from then advancing any further support for Plaintiff's position that the Firm was acting against both client and self-interest.

## Rico

103. Plaintiff repeats each and every allegation set forth above and each and every allegation set forth above is hereby incorporated by reference.

104. Defendants conspired to commit the above actions and Defendant's conspiracy reflects a pattern and practice of conspiring to undertake such actions in express violation of 18 U.S.C. 96 ("RICO").

## Joint and Several Claim

105. To the extent that the aforesaid claims are not encompassed within a Firm or like indemnity, Plaintiff claims against each Defendant, jointly and severally.

### Jury Trial

106. Plaintiff hereby demands a trial by jury.

### Prayer for Relief

Wherefore, for professional, reputational, financial, and personal destruction as aforesaid, Plaintiff demands judgment against Defendant in the sum of $30,000,000, and as determined by jury, with interest and costs.

**DISTRICT OF COLUMBIA, ss**
Phone:

11( being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all set-offs and just grounds of defense.

(Plaintiff **Agent**)

Subscribed and sworn to before me this 20ᵗʰ Day of December 2017

(Notary Public/Deputy Clerk)

DONALD MIGLIARDI
Notary Public, Fairfield County
My Comm. Exp. January 31, 2020

Superior Court of the District of Columbia
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Roger Rosendahl
_____
                    Plaintiff
            vs.                                                    **2017 CA 008490 B**
                                                    Case Number _____
Stoel Rives, LLP.
_____
                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Roger Rosendahl
_____
Name of Plaintiff's Attorney                         Clerk of the Court

1 Old Forge Road
_____
Address                                        By _____ Deputy Clerk
Greenwich, CT 06830

347-449-1013; rwrosendahl@gmail.com           Date  **12/26/2017**
_____
Telephone
如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
한국어로 번역을 원하시면, (202)879-4828로 전화주세요    ኢትዮጵያ ትርጉም ካስፈለገዎ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4

Superior Court of the District of Columbia
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Roger Rosendahl

_____
Plaintiff

vs.

Bradley Tellam                                          Case Number   **2017 CA 008490 B**

_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Roger Rosendahl
_____
Name of Plaintiff's Attorney

1 Old Forge Road
_____
Address
Greenwich, CT 06836

347-449-1013; rwrosendahl@gmail.com
_____
Telephone
如需翻译，请致电 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bản dịch, hãy gọi (202) 879-4828
한국어로 통역을 원하시면, (202)879-4828로 연락하십시오    በዚህ ጉዳይ አስተርጓሚ (202) 879-4828 ይደውሉ

Clerk of the Court

By _____
Deputy Clerk

Date   **12/26/2017**

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4

Superior Court of the District of Columbia
CIVIL ACTIONS BRANCH
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Roger Rosendahl
                                        Plaintiff
                        vs.
                                                        Case Number    **2017 CA 008490 B**
Andrew Moratzka
                                        Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Roger Rosendahl
Name of Plaintiff's Attorney

1 Old Forge Road
Address
Greenwich, CT 06830

347-449-1013, rwrosendahl@gmail.com
Telephone
如需翻譯，請致電 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202)879-4828로 연락하십시오     ጂ      የአማርኛ ለመጠየቅ ይደውሉ (202) 879-4828 ኩፐጆ

Clerk of the Court
By _____ Deputy Clerk

Date    **12/26/2017**

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                            Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Roger Rosendahl
_____
                    Plaintiff
                vs.
                                          Case Number   **2017 CA 008490 B**
David Quinby
_____
                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Roger Rosendahl
_____
Name of Plaintiff's Attorney
1 Old Forge Road
_____                By _____  Deputy Clerk
Address
Greenwich, CT 06830
347-449-1013
_____
Telephone                                Date   **12/26/2017**

如需翻译，请致电 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction       Để có một bài dịch, hãy gọi (202) 879-4828
한국어 번역을 원하시면, (202) 879-4828로 연락하십시오.       የ ትርጉም ፡ አተረጓጎም ፡ (202) 879-4828 ፡ ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4

Superior Court of the District of Columbia
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Roger Rosendahl
_____
Plaintiff

vs

Mark Morford                                    Case Number    **2017 CA 008490 B**
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Roger Rosendahl
_____
Name of Plaintiff's Attorney

1 Old Forge Road                                    By _____
Address                                                          Deputy Clerk
Greenwich, CT 06830

34-449-1013, rwrosendahl@gmail.com          Date  **12/26/2017**
Telephone
如需翻译，请致电 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202)879-4828로 전화주세요        የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4

Superior Court of the District of Columbia
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Roger Rosendahl

_____
                                    Plaintiff
                    vs.

Greg Jenner                                          Case Number   2017 CA 008490 B
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Roger Rosendahl
_____
Name of Plaintiff's Attorney

1 Old Forge Road                                    Clerk of the Court
_____
Address                                             By _____
Greenwich, CT 06830                                                    Deputy Clerk

347-449-1013; rwrosendahl@gmail.com
_____
Telephone                                           Date   12/26/2017

如需翻译，请致电 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4