## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ROGER ROSENDAHL**,

Plaintiff,

v.

**STOEL RIVES, LLP**, *et al.*,

Defendants.

**Civil Action No.  1:18-cv-1731-RBW**

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Stoel Rives, LLP ("Stoel Rives"), and Defendants Mark Morford, Bradley Tellam, Andrew Moratzka, David Quinby, and Gregory Jenner (together with Stoel Rives, "Defendants") hereby move to dismiss Plaintiff Roger Rosendahl's ("Rosendahl") complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.[1]

First, the complaint should be dismissed in full against Morford, Tellam, Moratzka, and Quinby pursuant to Fed. R. Civ. P. 12(b)(2) because Rosendahl fails to (and cannot) establish any basis for personal jurisdiction over those individuals in the District of Columbia.  Second, Rosendahl's claims against Stoel Rives and Jenner are all subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Accordingly, and for the reasons explained in the accompanying Memorandum of Law, Defendants respectfully request that the Court grant their motion.

---

[1]   Defendants Morford, Tellam, Moratzka, and Quinby presently join this motion only to challenge the Court's personal jurisdiction over them under Rule 12(b)(2) and reserve all rights regarding dismissal on other grounds.  In the event the Court denies the motion(s) to dismiss for lack of personal jurisdiction, these defendants adopt and incorporate the arguments as to the insufficiency of Rosendahl's claims under Rule 12(b)(6).

Dated: August 1, 2018

Respectfully submitted,

  /s/ Matthew J. Sharbaugh
Grace E. Speights (D.C. Bar No. 392091)
grace.speights@morganlewis.com
Matthew J. Sharbaugh (D.C. Bar No. 1009614)
matthew.sharbaugh@morganlewis.com
Kaiser H. Chowdhry (D.C. Bar No. 999082)
kaiser.chowdhry@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel:    (202) 739-3000
Fax:    (202) 739-3001

*Attorneys for Defendants* Stoel Rives, LLP,
Mark Morford, Bradley Tellam, Andrew
Moratkza, David Quinby, and Gregory Jenner

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ROGER ROSENDAHL**,

                Plaintiff,

     v.

**STOEL RIVES, LLP**, *et al.*,

                Defendants.

Civil Action No.  1:18-cv-1731-RBW

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................... 2

       A.     Summary of Rosendahl's Allegations ................................................. 3

       B.     Relevant Procedural Background ......................................................... 5

III.   DISCUSSION ..................................................................................................... 6

       A.     The Court Should Dismiss The Complaint As To Defendants Morford,
              Tellam, Moratzka, and Quinby For Lack Of Personal Jurisdiction ..................... 6

              1.     Applicable Legal Standards ........................................................ 6

              2.     The Court Lacks Personal Jurisdiction Over Defendants Morford,
                     Tellam, Moratzka, and Quinby ................................................... 7

                     a.     The Absence Of General Jurisdiction ............................ 8

                     b.     The Absence Of Specific Jurisdiction ........................... 9

       B.     The Court Should Dismiss Rosendahl's Claims Against Stoel Rives And
              Jenner For Failure To State A Plausible Claim Under Rule 12(b)(6) ................. 14

              1.     Applicable Legal Standards ....................................................... 14

              2.     Rosendahl's Age Discrimination Claim Fails As Time-Barred ............. 15

              3.     Rosendahl Fails To Allege A Viable IIED Claim ................................. 16

              4.     Rosendahl Fails To Allege A Viable Conversion Claim ...................... 17

              5.     Rosendahl's Fraud Allegations Fail To State A Claim ........................ 18

              6.     Rosendahl Fails To Allege A Plausible Breach-of-Contract Claim ........ 20

              7.     Rosendahl Fails To State An Actionable Claim For Breach Of The
                     Implied Covenant Of Good Faith And Fair Dealing ........................... 21

              8.     Rosendahl Fails To Allege A Viable Defamation Claim ...................... 22

              9.     District Law Does Not Recognize A Civil "Extortion" Claim ............... 24

              10.    Rosendahl Fails To Allege A Viable Hostile Work Environment
                     Claim Under The D.C. Human Rights Act ...................................... 24

              11.    Rosendahl Fails To Allege A Viable Retaliation Claim Under The
                     D.C. Human Rights Act .......................................................... 27

              12.    Rosendahl Fails To Allege A Viable RICO Claim ............................. 28

              13.    Rosendahl's "Joint and Several Claim" Is Improper .......................... 30

       C.     Rosendahl Fails To State Any Actionable Claim Against Jenner
              Individually .......................................................................................... 30

IV.    CONCLUSION ................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Glob. Sols., Inc. v. MVM, Inc.*,
 552 F. Supp. 2d 1 (D.D.C. 2008) ....................................................................17, 18

*Ali v. District of Columbia*,
 697 F. Supp. 2d 88 (D.D.C. 2010) ...........................................................................25

*Arencibia v. 2401 Restaurant Corp.*,
 699 F. Supp. 2d 318 (D.D.C. 2010) .........................................................................15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................14

*Atraqui v. GUMC Unified Billing Servs.*,
 788 A.2d 559 (D.C. 2002) .........................................................................................19

*W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
 235 F.3d 629 (D.C. Cir. 2001) ..................................................................................29

*Badibanga v. Howard Univ. Hosp.*,
 679 F. Supp. 2d 99 (D.D.C. 2010) ...........................................................................26

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................14

*Benic v. Reuters Am., Inc.*,
 357 F. Supp. 2d 216 (D.D.C. 2004) ....................................................................22, 23

*Bennett v. Kiggins*,
 377 A.2d 57 (D.C. 1977) ...........................................................................................19

*Brady v. Livingood*,
 360 F. Supp. 2d 94 (D.D.C. 2004) ...........................................................................28

*Broderick v. Donaldson*,
 437 F.3d 1226 (D.C. Cir. 2006) ................................................................................27

*Browning v. Clinton*,
 292 F.3d 235 (D.C. Cir. 2002) ..................................................................................16

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ............................................................................................10, 25

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Busby v. Capital One, N.A.*,
   772 F. Supp. 2d 268 (D.D.C. 2011) ........................................................................20

*C & E Servs., Inc. v. Ashland Inc.*,
   601 F. Supp. 2d 262 (D.D.C. 2009) ........................................................................22

*Cannon v. Wells Fargo Bank, N.A.*,
   926 F. Supp. 2d 152 (D.D.C. 2013) ........................................................................18

*Capitol Justice, LLC v. Wachovia Corp.*,
   No. 07-cv-2095, 2008 WL 11388566 (D.D.C. June 11, 2008) .............................21

*Cheeks v. Fort Myer Constr. Corp.*,
   216 F. Supp. 3d 146 (D.D.C. 2016) ........................................................................30

*Cherichel v. Ergo Solutions, LLC*,
   85 F. Supp. 3d 245 (D.D.C. 2015) ..........................................................................15

*Clemmons v. Acad. for Educ. Dev.*,
   70 F. Supp. 3d 282 (D.D.C. 2014) ..........................................................................25

*Congress v. Dist. of Columbia*,
   277 F. Supp. 3d 82 (D.D.C. 2017) ..........................................................................28

*CopyWatch, Inc. v. Am. Nat'l Red Cross*,
   299 F. Supp. 3d 189 (D.D.C. 2018) ..........................................................................3

*Corp. Sys. Res. V. Wash. Metro. Transit Auth.*,
   535 F. Supp. 2d 60 (D.D.C. 2014) ..........................................................................21

*Crane v. Carr*,
   814 F.2d 758 (D.C. Cir. 1987) ................................................................................13

*Crane v. N.Y. Zoological Soc'y*,
   894 F.2d 454 (D.C. Cir. 1990) ..................................................................................6

*Creighton Ltd. v. Gov't of Qatar*,
   181 F.3d 118 (D.C. Cir. 1999) ................................................................................10

*Curran v. Holder*,
   626 F. Supp. 2d 30 (D.D.C. 2009) ............................................................................7

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ................................................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Darcars Motors of Silver Spring, Inc. v. Borzym*,
  841 A.2d 828 (Md. 2004) ....................................................................................18

*Daskalea v. Wash. Humane Soc'y*,
  480 F. Supp. 2d 16 (D.D.C. 2007) ......................................................................24

*Drejza v. Vaccaro*,
  650 A.2d 1308 (D.C. 1994) .................................................................................16

*Dumitrescu v. DynCorp Int'l, LLC*,
  257 F. Supp. 3d 13 (D.D.C. 2017) ........................................................................6

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
  48 F.3d 1260 (D.C. Cir. 1995) .......................................................................28, 29

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998).............................................................................................25

*FC Inv. Group LC v. IFX Mkts., Ltd.*,
  479 F. Supp. 2d 30 (D.D.C. 2007) ......................................................................12

*FC Inv. Grp. LC v. IFX Mkts., Ltd.*,
  529 F.3d 1087 (D.C. Cir. 2008) .............................................................................6

*First Chi. Int'l v. United Exch. Co., Ltd.*,
  836 F.2d 1375 (D.C. Cir. 1988) ...........................................................................10

*Fischer v. Estate of Flax*,
  816 A.2d 1 (D.C. 2003) .......................................................................................24

*Fleet Credit Corp. v. Sion*,
  893 F.2d 441 (1st Cir. 1990)................................................................................29

*Forras v. Rauf*,
  812 F.3d 1102 (D.C. Cir. 2016) ...............................................................8, 10, 12

*Fox v. Giaccia*,
  424 F. Supp. 2d 1 (D.D.C. 2006) ........................................................................27

*Frost v. Catholic Univ. of Am.*,
  960 F. Supp. 2d 226 (D.D.C. 2013) ......................................................................6

*FutureGen Co. v. Carter*,
  915 F. Supp. 2d 104 (D.D.C. 2013) ....................................................................13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Goodyear Dunlop Tires Ops, S.A. v. Brown*,
  564 U.S. 915 (2011) .................................................................................................7, 8

*Grant v. May Dep't Stores Co.*,
  786 A.2d 580 (D.C. 2001) ...............................................................................27

*Grimes v. District of Columbia*,
  89 A.3d 107 (D.C. 2014) .................................................................................16

*Hajjar-Nejad v. George Wash. Univ.*,
  802 F. Supp. 2d 166 (D.D.C. 2011) ................................................................20

*Hancock v. Wash. Hosp. Ctr.*,
  908 F. Supp. 2d 18 (D.D.C. 2012) ..................................................................17

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) ...........................................................................................25

*Haynes v. Navy Fed. Credit Union*,
  825 F. Supp. 2d 285 (D.D.C. 2011) ................................................................20

*Headfirst Baseball LLC v. Elwood*,
  168 F. Supp. 3d 236 (D.D.C. 2016) ................................................................18

*Helmer v. Doletskaya*,
  393 F.3d 201 (D.C. Cir. 2004) ........................................................................12

*Hunter v. Dist. of Columbia*,
  797 F. Supp. 2d 86 (D.D.C. 2011) ..................................................................26

*Ihebereme v. Capital One, N.A.*,
  730 F. Supp. 2d 40 (D.D.C. 2010) ..................................................................19

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) .........................................................................................10

*Islamic Am. Relief Agency v. Unidentified FBI Agents*,
  394 F. Supp. 2d 34 (D.D.C. 2005) ....................................................................9

*Johnson v. Dist. of Columbia*,
  572 F. Supp. 2d 94 (D.D.C. 2008) ..................................................................26

*Jones v. United States*,
  949 F. Supp. 2d 50 (D.D.C. 2013) ....................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ............................................................................. 3

*Kassem v. Wash. Hosp. Ctr.*,
  513 F.3d 251 (D.C. Cir. 2008) ............................................................................ 17

*Kelley v. Billington*,
  370 F. Supp. 2d 151 (D.D.C. 2005) .................................................................... 26

*Khatib v. Alliance Bankshares Corp.*,
  846 F. Supp. 2d 18 (D.D.C. 2012) ................................................................... 6, 7

*King v. Jackson*,
  468 F. Supp. 2d 33 (D.D.C. 2006) ..................................................................... 28

*King v. Pierce Assocs., Inc.*,
  601 F. Supp. 2d 245 (D.D.C. 2009) .................................................................... 25

*Klayman v. Segal*,
  783 A.2d 607 (D.C. 2001) .................................................................................. 22

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ..................................................................... 15, 19

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
  786 F. Supp. 2d 240 (D.D.C. 2011) ..................................................................... 8

*Lemmons v. Georgetown Univ. Hosp.*,
  431 F. Supp. 2d 76 (D.D.C. 2006) ..................................................................... 27

*Lemon v. Kramer*,
  270 F. Supp. 3d 125 (D.D.C. 2017) ..................................................................... 7

*Lopes v. JetSetDC, LLC*,
  70 F. Supp. 3d 555 (D.D.C. 2014) ..................................................................... 30

*Malek v. Flagstar Bank*,
  70 F. Supp. 3d 23 (D.D.C. 2014) ....................................................................... 20

*Mattiaccio v. DHA Grp., Inc.*,
  908 F. Supp. 2d 136 (D.D.C. 2012) .................................................................... 24

*McNamara v. Picken*,
  950 F. Supp. 2d 152 (D.D.C. 2013) .................................................................... 18

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Mullin v. Wash. Free Weekly, Inc.*,
  785 A.2d 296 (D.C. 2001) ........................................................................................23

*Myers v. Holiday Inns, Inc.*,
  915 F. Supp. 2d 136 (D.D.C. 2013) .............................................................................6

*Neitzke v. Williams*,
  490 U.S. 319 (1989) .................................................................................................14

*Paul v. Howard Univ.*,
  754 A.2d 297 (D.C. 2000) ........................................................................................17

*Peters v. Dist. of Columbia*,
  873 F. Supp. 2d 158 (D.D.C. 2012) ...........................................................................25

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*,
  924 F.2d 1114 (D.C. Cir. 1991) ................................................................................28

*Roe v. Bernabei & Wachtel PLLC*,
  85 F. Supp. 3d 89 (D.D.C. 2015) ..............................................................................29

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ...................................................................................................6

*Samuel v. Wells Fargo & Co.*,
  No. 17-cv-2539, 2018 WL 1997267 (D.D.C. Apr. 27, 2018).............................19, 23

*Stovell v. James*,
  810 F. Supp. 2d 237 (D.D.C. 2011) ...........................................................................24

*Tsintolas Realty Co. v. Mendez*,
  984 A.2d 181 (D.C. 2009) ........................................................................................22

*Turner v. Abbott*,
  53 F. Supp. 3d 61 (D.D.C. 2014) ................................................................................9

*Vasquez v. Whole Foods Mkt., Inc.*,
  302 F. Supp. 3d 36 (D.D.C. 2018) .............................................................................13

*Wash. Gas Light Co. v. Pub. Serv. Comm'n of Dist. of Columbia*,
  61 A.3d 662 (D.C. 2013) ..........................................................................................17

*World Wide Travel, Inc. v. Travelmate US, Inc.*,
  6 F. Supp. 3d 1 (D.D.C. 2013) ....................................................................................8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ..................................................................................................10

*Wu v. Special Counsel, Inc.*,
  54 F. Supp. 3d 48 (D.D.C. 2014) ...............................................................................7

*Xereas v. Heiss*,
  933 F. Supp. 2d 1 (D.D.C. 2013) ..............................................................................21

*Zolfaghari v. Sheikholeslami*,
  943 F.2d 451 (4th Cir. 1991) ....................................................................................29

**Statutes**

18 U.S.C. § 96 ...............................................................................................................29

18 U.S.C. § 1961(1) ................................................................................................28, 29

D.C. Code § 2-1403.16(a) .............................................................................................15

D.C. Code § 13-422 ....................................................................................................8, 9

D.C. Code § 13-423(a) .........................................................................................9, 10, 12

**Other Authorities**

D.C. Superior Court Rule 4(m) .......................................................................................6

Fed. R. Civ. P. 8 ......................................................................................................2, 29

Fed. R. Civ. P. 9(b) .................................................................................................2, 19

Fed. R. Civ. P. 12(b) ........................................................................................... *passim*

Fed. R. Civ. P. 81(c) .......................................................................................................6

## I.  __INTRODUCTION__

In April 2014, Plaintiff Roger Rosendahl ("Rosendahl") joined Stoel Rives, LLP ("Stoel Rives" or the "Firm") as a capital partner in the Firm's Energy group.  At the time Stoel Rives hired him, Rosendahl was 73 years old.  Given Rosendahl's background and client relationships, Stoel Rives expected that he would quickly become a major contributor within the Firm, and he was awarded a compensation package to match.  But those expectations fell flat.  Rosendahl's billable and client contributions were meager, to say the least.  In January 2015, Rosendahl was stepped down to a limited percentage partner, and, by the end of 2015, he was demoted and withdrew from the Firm's partnership entirely.  At that time, he became employed as a contract attorney effective January 1, 2016, but his performance continued to suffer.  For this and other reasons, the Firm ultimately made a decision to part ways with Rosendahl altogether, and the Head of the Energy group delivered that news to Rosendahl on December 6, 2016.

More than a year later, on December 21, 2017, Rosendahl filed this lawsuit asserting a panoply of legal claims against not only Stoel Rives, but also a group of Firm partners in their individual capacities.  Rosendahl's scattershot claims are baseless and should be dismissed.

To start, Rosendahl does not (and cannot) establish that most of the individual partners he attempts to sue—Mark Morford, Bradley Tellam, Andrew Moratzka, and David Quinby—are subject to personal jurisdiction in the District of Columbia.  Those individuals reside and work in Oregon or Minnesota, and they have no ties to the District of Columbia that would enable Rosendahl to invoke general or specific personal jurisdiction over them in this forum.  The Court should therefore dismiss those individuals pursuant to Federal Rule of Civil Procedure 12(b)(2).

Further, even as to Stoel Rives and Jenner, Rosendahl's theories fail to state a claim upon which relief can be granted.  To start, Rosendahl's D.C. tort-law claims fail as insufficiently pled for various reasons: he fails to allege any "outrageous" conduct to sustain a claim for intentional

infliction of emotional distress ("IIED"); he fails to allege that any actionable property was converted from him; his alleges no facts to establish the requisite fraudulent knowledge by Stoel Rives, or any resulting reliance on Rosendahl's part, necessary to pursue a fraud claim under the heightened standards of Fed. R. Civ. P. 9(b); and his defamation claim fails to allege any specific false statement made by Stoel Rives or Jenner, and may be (at least partially) time-barred.  In addition, Rosendahl's contract-based claims fail as too vaguely pled and duplicative.  Moreover, Rosendahl's D.C. Human Rights Act ("DCHRA") claims are time-barred by the governing one-year limitations period, and those claims fail to state a viable claim on their merits regardless.  Finally, Rosendahl's extortion and RICO claims are similarly without legal merit, and there is no actionable claim for "Joint and Several."  Because these claims are all insufficient as a matter of law, the Court should dismiss them under Rule 12(b)(6).

Finally, even if Rosendahl had alleged any viable legal theory against Stoel Rives (and he has not), he certainly has failed to do so against Jenner.  The complaint does not remotely adhere to the requirements of Fed. R. Civ. P. 8 and 9(b) by setting forth any plausible allegations that would render Jenner liable under any of Rosendahl's purported claims.  For this independent reason, the Court should dismiss Jenner from the action under Rule 12(b)(6).

Accordingly, and for the reasons set forth more fully below, Defendants respectfully submit that their Motion for Partial Dismissal should be granted.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Roger Rosendahl was an attorney with Stoel Rives from April 2014 through December 2016, when his relationship with the Firm was terminated.[2]  On December 21, 2017, he filed this

---

[2] Rosendahl's complaint wrongly asserts that he was terminated on December 6, 2017.  In reality, that occurred a full year earlier—on December 6, 2016.  Setting aside whether this was an intentional pleading strategy on Rosendahl's part or simply an error, the contemporaneous documents confirm the true date.  (Declaration of Andrew Moratzka ("Moratzka Decl.") ¶ 5, Ex. A.)  And because the December 2016 correspondence scheduling the review/termination

lawsuit in D.C. Superior Court, asserting a smattering of claims against Stoel Rives and several of the Firm's partners in their individual capacities.

### A.    <u>Summary of Rosendahl's Allegations.</u>

Rosendahl joined the Firm in April 2014, as a partner resident in Stoel Rives' Washington, D.C. office.  (Compl. ¶¶ 4, 11-12.)  As the complaint reflects, Rosendahl was 73 years old at the time Stoel Rives hired him.  (*Id.* ¶ 11.)

Rosendahl became a member of the Energy group at Stoel Rives, with a particular focus on project finance work.  (Compl. ¶¶ 41-42.)  Along with the substantial business the Firm believed Rosendahl would generate himself (which never materialized, despite his representations during the hiring process), Rosendahl was expected to team with other Stoel Rives attorneys to perform work for the Firm's existing clients.  Rosendahl's complaint includes allegations regarding one of those clients, which was exploring a project in the Pacific Northwest.  Specifically, Rosendahl was asked to help develop a proposal to offer project-financing work that would be associated with the existing project.  (*Id.* ¶¶ 45-48.)

Stoel Rives ultimately secured the full slate of work, and, in September 2014, the Firm executed an engagement letter with the client.  (Compl. ¶¶ 50-51.)  Rosendahl alleges that the engagement letter identified him as the partner responsible for the project-financing aspects of the project, while the client-relationship partner, Mark Morford, was identified as the partner responsible for the permitting work.  (*Id.* ¶ 52.)  According to Rosendahl, Morford proposed that the "origination credit" for the project financing work be split between the two of them, with Morford to receive a one-third share and Rosendahl to receive a two-thirds share.  (*Id.* ¶ 53.)

---

meeting was explicitly referenced in the complaint, the Court can consider that document at the pleadings stage.  *See, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *CopyWatch, Inc. v. Am. Nat'l Red Cross*, 299 F. Supp. 3d 189, 195-96 (D.D.C. 2018).

Rosendahl claims that Morford, as the client lead, did not allow Rosendahl to bill for much of the time he spent on preliminary work on the project-financing side.  (Compl. ¶¶ 55-57.)  According to the complaint, Morford subsequently reassigned certain of Rosendahl's responsibilities, including several client-facing duties, to another Stoel Rives partner in Portland, whose work Rosendahl's complaint criticizes as sub-par.  (*Id.* ¶¶ 59-62.)  Rosendahl claims that this other partner asked him for feedback on various draft materials, and that, after he spent "substantial time" on those projects, Morford would not bill all of his time to the client.  (*Id.* ¶ 63.)  Subsequently, Rosendahl alleges that in 2017—which, to reiterate, is impossible because Rosendahl's employment with Stoel Rives ended in December 2016—Morford asked him to help introduce and acclimate another partner to the client, who later replaced Rosendahl's role on the team.  (*Id.* ¶¶ 64, 67.)  Rosendahl asserts that he received "zero origination credit" for the client project.  (*Id.* ¶¶ 76-78.)  According to Rosendahl, Morford later negotiated a new engagement letter for the client which did not include any reference to Rosendahl.  (*Id.* ¶ 79.)

In July 2016, Rosendahl alleges that the Firm's Managing Partner proposed that he enter into an employment agreement with the Firm, pursuant to which Rosendahl would continue to work for the firm as "Co-Head – Project Finance."  (Compl. ¶ 73-74.)  According to Rosendahl, the Managing Partner was to become Rosendahl's "Integration Partner," who would "provide a plan for [his] integration and continuing role[.]"  (*Id.*)  Rosendahl claims that the Firm "did not fulfill the intended purposes of [his] employment agreement."  (*Id.* ¶ 82.)

On a separate front, Rosendahl alleges to have made a "playfully provocative comment" to a group of female associates during a firm retreat—something to the effect of, "don't you know that you're too nice to be a litigator."  (Compl. ¶ 96.)  (Rosendahl made several other inappropriate comments during that retreat, as well.)  When the Firm commenced an investigation into

Rosendahl's remarks based on employee complaints, Rosendahl characterized that effort as a "behind-the-scene Soviet-style 'Inquisition,'" which he alleges resulted in his being "proclaimed … a drunken bigot while announcing [his] punishment." (*Id.*)

On December 6, 2016, the Firm notified Rosendahl that his relationship with Stoel Rives was being terminated. (Compl. ¶ 22.)[3] Andrew Moratzka, Head of the Energy group, conveyed the Firm's decision during a meeting that he attended via videoconference from Minneapolis. (*Id.*) Gregory Jenner, who was resident in the D.C. office (but who had no supervisory responsibility over Rosendahl), attended the meeting in person as a witness. (*Id.*)

According to Rosendahl, after he left the Firm's office following that December 6, 2016 meeting, he realized that he left his glasses and cell phone behind; when he asked to retrieve them, the building's security would not allow him to return independently, and so security accompanied him to retrieve his items at the time. (Compl. ¶ 33.) Rosendahl also alleges that his prior assistant at Stoel Rives neglected to secure a hotel reservation in New York for the night of December 7, 2016, in advance of his wife's medical procedure, without notifying Rosendahl. (*Id.* ¶¶ 34-35.) Rosendahl asserts that these particular circumstances sent his family "into a tailspin of emotional and physical distress." (*Id.* ¶ 36.)

Rosendahl alleges that, following his termination, the Firm defamed him by informing clients and potential employment prospects of his "sudden termination." (Compl. ¶ 27.)

### B.    Relevant Procedural Background.

Rosendahl initiated this action in D.C. Superior Court on December 21, 2017. (*See generally* Compl.)  After Rosendahl failed to file the requisite proofs of service within the time

---

[3] Again, although Rosendahl's complaint alleges that these events took place in December 2017, they in fact transpired in December 2016. (*See* Moratzka Decl. ¶ 5, Ex. A.)

period required, the Superior Court dismissed his case pursuant to D.C. Superior Court Rule 4(m)

on February 28, 2018.  Rosendahl then filed a "Motion to Reopen," alleging that he effected service

on the defendants and asking the court to reinstate his case.  The Superior Court ultimately granted

that motion on July 9, 2018.  On July 25, 2018, Defendants removed this action to federal court,

and, pursuant to Fed. R. Civ. P. 81(c), this motion timely followed.

## III.  DISCUSSION

### A.  The Court Should Dismiss The Complaint As To Defendants Morford, Tellam, Moratzka, and Quinby For Lack Of Personal Jurisdiction.

#### 1.  Applicable Legal Standards.

Personal jurisdiction "is an essential element of the jurisdiction of a district ... court,

without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil

Co.*, 526 U.S. 574, 584 (1999).  "The plaintiff has the burden of establishing a factual basis for the

exercise of personal jurisdiction over [each] defendant." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d

454, 456 (D.C. Cir. 1990); *accord FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1092 (D.C.

Cir. 2008).  "To satisfy this burden, the plaintiff must be able to point to 'specific acts connecting

the defendant with the forum.'" *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 26

(D.D.C. 2012) (quoting *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1377 (D.C. Cir.

1988)); *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 231 (D.D.C. 2013) ("[A] plaintiff

must allege specific acts on which personal jurisdiction can be based; it cannot rely on conclusory

allegations."); *accord Dumitrescu v. DynCorp Int'l, LLC*, 257 F. Supp. 3d 13, 17 (D.D.C. 2017)

("A plaintiff cannot rely on conclusory allegations to establish personal jurisdiction.").  In

evaluating whether personal jurisdiction exists, the Court is not confined to the pleadings, but may

instead "receive and weigh affidavits and any other relevant matter to assist it in determining the

jurisdictional facts." *Khatib*, 846 F. Supp. 2d at 26; *see also Myers v. Holiday Inns, Inc.*, 915 F.

Supp. 2d 136, 139 (D.D.C. 2013).  Where the Court lacks personal jurisdiction over a defendant,

it "must dismiss" any claims against that defendant pursuant to Fed. R. Civ. P. 12(b)(2).  *See, e.g.,*

*Jones v. United States*, 949 F. Supp. 2d 50, 53 (D.D.C. 2013).[4]

### 2. The Court Lacks Personal Jurisdiction Over Defendants Morford, Tellam, Moratzka, and Quinby.

Rosendahl fails to (and cannot) allege any plausible basis for this Court's exercise of

jurisdiction over two-thirds of the defendants named in his complaint: Morford, Tellam, Moratzka,

and Quinby (the "Out-of-Area Defendants").  The Court must therefore dismiss these individuals

from this action under Rule 12(b)(2).[5]

There are two basic categories of personal jurisdiction: "[1] general or all-purpose

jurisdiction, and [2] specific or case-linked jurisdiction."  *Goodyear Dunlop Tires Ops, S.A. v.*

*Brown*, 564 U.S. 915, 919 (2011).  "General jurisdiction applies regardless of the nature of the

claim, but it is only available based on 'a limited set of affiliations with a forum.'"  *Lemon v.*

*Kramer*, 270 F. Supp. 3d 125, 136 (D.D.C. 2017) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746,

760 (2014)).  For an individual, "the paradigm forum for the exercise of general jurisdiction is the

individual's domicile[.]"  *Daimler*, 134 S. Ct. at 760; *Khatib*, 846 F. Supp. 2d at 26 ("General

---

[4] Although *pro se* complaints are sometimes construed more liberally than counseled complaints, "when a *pro se* plaintiff is an attorney … []he is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiffs because an attorney is presumed to have a knowledge of the legal system and need less protections from the court."  *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009) (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007)); *accord Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 51 (D.D.C. 2014) ("Because Plaintiff is a lawyer with several degrees and many years' experience … no special treatment is due.").  So it is here. Rosendahl is an attorney with decades of experience, which he touts in the complaint.  (*See, e.g.*, Compl. ¶ 37 ("Plaintiff has had a long and distinguished professional career, including partnerships in major Wall Street law firms and recognition among both 'Top Lawyers in Manhattan' and 'Top Lawyers in California …. He has been featured on the cover of the *Los Angeles Lawyer*, nationally interviewed on the *Financial Times Network*, and quoted in multiple publications[.]").)  He currently is a partner with the firm Nelson Mullins Riley & Scarborough, LLP, in New York.  https://www.nelsonmullins.com/people/roger-rosendahl#main.  Given the various credentials and accolades that Rosendahl less-than-humbly catalogues in his complaint (Compl. ¶¶ 37, 40-41), the Court should "treat his pleadings as it would any other lawyer's."  *Wu*, 54 F. Supp. 3d at 52.

[5] Defendants accede that Stoel Rives and Jenner are subject to personal jurisdiction in this forum.  But Rosendahl's claims against them are nonetheless subject to dismissal under Fed. R. Civ. P. 12(b)(6), as explained *infra*.

jurisdiction permits a court to hear any claims against a defendant when its contacts with the forum 'are so continuous and systematic as to render them essentially at home in the forum.'" (quoting *Goodyear*, 564 U.S. at 919)).   In this vein, District of Columbia law provides for general jurisdiction over a person who is "domiciled in … or maintain[s] his … principal place of business in, the District[.]"  D.C. Code § 13-422.

By contrast, specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear*, 564 U.S. at 919. "In other words, the case must arise from the defendant's contacts with the forum state."  *World Wide Travel, Inc. v. Travelmate US, Inc.*, 6 F. Supp. 3d 1, 6 (D.D.C. 2013).   To evaluate the existence of specific jurisdiction over a nonresident, the court "must first decide whether statutory jurisdiction exists under the District's long-arm statute and, if it does, then [it] must determine whether an exercise of jurisdiction would comport with constitutional limitations."  *Forras v. Rauf*, 812 F.3d 1102, 1105-06 (D.C. Cir. 2016) (citing *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).

Here, Rosendahl fails to set forth any well-pled allegations that would permit the Court to exercise either general or specific jurisdiction over the Out-of-Area Defendants.[6]

### a.     The Absence Of General Jurisdiction.

Rosendahl does not offer allegations that even come close to showing that the Out-of-Area Defendants have contacts with the District that are "so continuous and systematic as to render them essentially at home" here, nor could he.  The complaint refers to Oregon and Minnesota addresses for those individuals—nowhere close to the District.  (Compl. ¶¶ 5-8.)  Those allegations are

---

[6]  The Court must evaluate personal jurisdiction on an individual basis, based on each defendant's personal activities. *See, e.g.*, *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 267 n.16 (D.D.C. 2011) (stating that "the exercise of personal jurisdiction" over members of a partnership "must be based on the individual actions of each defendant") (citing *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003))).

consistent with reality.  None of the Out-of-Area Defendants resides in the District, nor maintains a "principal place of business" in D.C.  D.C. Code § 13-422.  Rather, these individuals reside, and work from the Firm's offices, in Oregon and Minnesota.  (*See* Declaration of Mark Morford ("Morford Decl.") ¶ 2; Declaration of Bradley Tellam ("Tellam Decl.") ¶ 2; Mortazka Decl. ¶ 2; Declaration of David Quinby ("Quinby Decl.") ¶ 2.)  These unassailable facts preclude any invocation of general personal jurisdiction.  *See, e.g.*, *Turner v. Abbott*, 53 F. Supp. 3d 61, 67 (D.D.C. 2014) (finding no general jurisdiction over Texas Attorney General, who was not domiciled in D.C. and whose office was in Texas); *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 56-57 (D.D.C. 2005) (similar).

### b.    The Absence Of Specific Jurisdiction.

Rosendahl similarly does not (and cannot) establish any basis to assert specific jurisdiction over the Out-of-Area Defendants in this forum.  As relevant here, the District of Columbia's long-arm statute permits a court to "exercise jurisdiction over a person … as to a claim for relief arising from the person's":

(1)    transacting any business in the District of Columbia;

* * *

(3)    causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4)    causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5)    having an interest in, using, or possessing real property in the District of Columbia.

* * *

D.C. Code § 13-423(a).[7]  None of these provisions provides any basis for jurisdiction here.

---

[7] Defendants omit reference to several subsections of Section 13-423(a) that are inapplicable on the facts here.

First, Rosendahl fails to allege that any of his claims against the Out-of-Area Defendants arise from their "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). This subsection of the statute is "coextensive … with the Constitution's due process limit," although the D.C. Circuit has stressed that it "still contemplates a connection that is related to the claim in suit." *Forras*, 812 F.3d at 1106 (internal citation omitted). Under the Due Process Clause, a court may only exercise jurisdiction over a nonresident defendant after finding sufficient "minimum contacts" by the defendant with the forum, "such that the maintenance of the suit does not offend traditional notions of fair play and justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The individual's contacts must be extensive enough that he "should reasonably anticipate being haled into court" in the forum, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980), and to show that he "purposeful[ly] avail[ed]" himself of "the benefits and protections of the forum's laws," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *see also Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 127 (D.C. Cir. 1999) ("It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

Rosendahl's complaint is devoid of any allegations to connect the purported acts of the Out-of-Area Defendants to the District, let alone at such a level as to show that an exercise of jurisdiction over them would comport with the limits of constitutional due process.

To start, the complaint's references to two of the defendants are about as threadbare as they come. The complaint mentions Quinby only once, in Paragraph 8, which alleges simply that he "is a partner and former Head of the Energy Department of Stoel Rives in its Minneapolis Office." (Compl. ¶ 8.) Rosendahl does not allege—nor could he—that Quinby has any contacts with this

forum, let alone any contacts related to the claims in this case. Quinby lives and works in Minnesota, and he has no ties to the District of Columbia. (Quinby Decl. ¶¶ 2-4.) The same holds true of Tellam. The complaint alleges only that he "is Chief Executive or Chief Operating Officer of Stoel Rives, resident in its Portland Office," and later makes a free-floating reference to a "letter to Brad Tellam attached," but which was nowhere to be found. (Compl. ¶¶ 6, 97.) Rosendahl fails to identify any contacts between Tellam and the District of Columbia, which is understandable because Tellam lives and works in Oregon, with no ties to the District. (Tellam Decl. ¶ 2-4.) Rosendahl simply has not alleged any facts, much less specific facts, to show that either of these individuals engaged in activity that constituted "transacting business" in the District within the meaning of the long-arm statute, and certainly not at a level that would satisfy the Due Process Clause's requirement of sufficient minimum contacts.

Although the complaint includes allegations as to Moratzka and Morford that are somewhat greater in number, those averments similarly fail to establish a basis for this Court's exercise of personal jurisdiction over them in the District. Starting with Moratzka, Rosendahl alleges that he "is a partner and Head of the Energy Department of Stoel Rives in its Minneapolis Office." (Compl. ¶ 5.) This assertion negates, rather than supports, any argument for jurisdiction in District of Columbia because Moratzka lives and works in Minnesota. (Moratzka Decl. ¶ 2.) At most, Rosendahl alleges that Moratzka emailed him an invitation to a meeting "in the conference room of the Washington, D.C. Office," during which Moratzka advised Rosendahl that he "was being terminated and would be removed forthwith from the Firm's website." (Compl. ¶¶ 21-22.) But Rosendahl obscures a crucial fact: Moratzka was not in the District of Columbia for this meeting, but appeared by videoconference from Minneapolis. (Moratzka Decl. ¶ 5.) Because Moratzka was in Minnesota—not D.C.—at the time, he was not "transacting" business in the District, and,

regardless, this single meeting certainly would not rise to the level of sufficiently extensive contacts to comport with the Due Process Clause.  *See, e.g.*, *Forras*, 812 F.3d at 1106 ("The plain text of subsection (a)(1) … focuses on where the defendant undertook the challenged (business) actions, not where the plaintiff felt the injury[.]"); *FC Inv. Group LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39-40 (D.D.C. 2007) (collecting cases holding that even repeated calls into the District was not "transacting business in the District of Columbia" under subsection (a)(1)), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008).

Finally, Rosendahl's allegations fare no better as to Morford.  He lives and works in the State of Oregon, as the complaint recognizes.  (Compl. ¶ 5, 77 ("Morford was resident in the Firm's Portland (main) office"); *see also* Morford Decl. ¶ 2.)  And Rosendahl otherwise offers no allegations—let alone specific allegations—that would even arguably suggest that Morford was transacting business in the District of Columbia.  Rather, Rosendahl's averments focus almost exclusively on Morford's alleged interactions with him related to a single Stoel Rives client—specifically concerning projects in the Pacific Northwest (and nowhere near the District of Columbia).  (*See* Compl. ¶¶ 46, 49.)  The mere fact that Rosendahl and Morford may have worked on matters for the same client, or that Morford may have made a (justified) decision *from Oregon* to limit Rosendahl's engagement with that particular client, is insufficient to trigger personal jurisdiction over Morford in the District under subsection (a)(1).

<u>Second</u>, Rosendahl cannot establish personal jurisdiction under subsection (a)(3) of the statute because none of the Out-of-Area Defendants caused any alleged tortious injury to Rosendahl through any "act or omission in the District of Columbia."  D.C. Code § 13-423(a)(3). This subsection "confers jurisdiction only over a defendant who *commits an act in the District* which causes an injury in the District."  *Forras*, 812 F.3d at 1107 (emphasis in original); *Helmer*

*v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004) (explaining that jurisdiction under subsection (a)(3) "requires that both act and injury occur in the District of Columbia").  The complaint fails to specify *any act* that the Out-of-Area Defendants are alleged to have committed in the District, rendering this subsection inapplicable.

<u>Third</u>, Rosendahl cannot invoke subsection (a)(4) to establish personal jurisdiction as to the Out-of-Area Defendants because, even assuming *arguendo* that any committed some tortious act that caused Rosendahl some claimed injury (and none did), Rosendahl does not and cannot point to any of the "plus" factors required by this subsection of the long-arm statute—*i.e.*, "regularly doing or soliciting business, engaging in persistent conduct, or deriving substantial revenue." *Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 48 (D.D.C. 2018).  As the D.C. Circuit has observed, the drafters of the long-arm statute crafted this subsection "to filter out cases in which the in-forum impact is an isolated event and the defendant has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987); *see also Vasquez*, 302 F. Supp. 3d at 48 ("[S]ubsection (a)(4) requires something more of plaintiffs than simply asserting that tortious conduct outside the District caused injury inside the District.").  And here, Rosendahl offers no facts—let alone the necessary "specific facts"—to show that any of the Out-of-Area Defendants engaged in anything close to the requisite "regular[]," "persistent," and "substantial" conduct necessary to trigger personal jurisdiction in this forum by some allegedly tortious act committed outside the District.[8]  *See FutureGen Co. v. Carter*, 915 F. Supp. 2d 104, 108 (D.D.C. 2013) (finding no jurisdiction under subsection (a)(4) for lack of "persistent course of conduct,"

---

[8]  Rosendahl likewise fails to sufficiently allege that he suffered any tortious injury within the District of Columbia, especially since he is a citizen-resident of Connecticut.  (Compl. ¶ 2.)

and reiterating that "direct conduct from another state into the District via telephone, internet, and mail is insufficient").

Finally, Rosendahl cannot invoke subsection (a)(5) because none of the Out-of-Area Defendants owns or has an interest in any real property in the District of Columbia.  (Quinby Decl. ¶ 4; Tellam Decl. ¶ 4; Moratzka Decl. ¶ 4; Morford Decl. ¶ 4.)

*     *     *

In sum, Rosendahl offers no basis to assert general or specific personal jurisdiction over any of the Out-of-Area Defendants.  None is "at home" in the District of Columbia to trigger general jurisdiction.  Neither can Rosendahl show a basis for specific jurisdiction, both because he cannot satisfy any element of the District's long-arm statute, and because, even if he could, haling these individuals into court in the District of Columbia would not comport with the Due Process Clause's traditional notions of fair play and justice.   The Court should dismiss the Out-of-Area Defendants pursuant to Fed. R. Civ. P. 12(b)(2).

### B.   The Court Should Dismiss Rosendahl's Claims Against Stoel Rives And Jenner For Failure To State A Plausible Claim Under Rule 12(b)(6).

#### 1.   Applicable Legal Standards.

Federal Rule of Civil Procedure 12(b)(6) is designed to "streamline litigation by dispensing with needless discovery and fact-finding" through the early dismissal of meritless claims.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Although the Court must construe all well-pled factual allegations as true in applying Rule 12(b)(6), it should not accept inferences that "are unsupported by the facts set out in the

complaint," nor "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## 2. Rosendahl's Age Discrimination Claim Fails As Time-Barred.

Rosendahl first asserts a violation of the "applicable laws of the District of Columbia prohibiting discrimination on the basis of age"—*i.e.*, the DCHRA. (Compl. ¶¶ 10-30.) Although the precise parameters of this claim are not entirely clear, Rosendahl alleges that "the firm excluded him from client pitches," "replaced [him] on a key public presentation," "attempted to replace [him] on prospectively successful pitches," and generally "isolated, disparaged, and harassed" him. (*Id.* ¶¶ 18-19.) These allegations fail. As a starting point, it strains credulity to suggest that Stoel Rives hired Rosendahl as a 73-year-old attorney (*see* Compl. ¶ 11), only to turn around and discriminate against him based on some purported ageist bias. But the Court need not even engage with that commonsense principle to dismiss Rosendahl's age discrimination claim because the claim is time-barred from the start.

The DCHRA permits suit only "within one year of the unlawful discriminatory act[.]" D.C. Code § 2-1403.16(a). Because Rosendahl filed his complaint on December 21, 2017, this means that only allegations occurring within the one-year limitations period—*i.e.*, after December 21, 2016— "are fair game." *Cherichel v. Ergo Solutions, LLC*, 85 F. Supp. 3d 245, 247-48 (D.D.C. 2015) (granting motion to dismiss DCHRA claim as time-barred); *see also Arencibia v. 2401 Restaurant Corp.*, 699 F. Supp. 2d 318, 325-27 (D.D.C. 2010) (similar). This undeniable timeline dooms any potential age discrimination claim Rosendahl purports to assert. Whether Rosendahl premises this claim on his exclusion from pitches and presentations during his time with the Firm, or some other allegations, any claim necessarily accrued by the time his employment with Stoel

Rives was terminated on December 6, 2016.[9]   (Compl. ¶¶ 21-22; Moratzka Decl. ¶ 5, Ex. A.) Because that occurred more than one year prior to the filing of his complaint, any claim under the DCHRA is time-barred and must be dismissed.

### 3.     Rosendahl Fails To Allege A Viable IIED Claim.

Rosendahl's IIED claim (*see* Compl. ¶¶ 31-38) should be dismissed because his allegations, even if accepted as true, fall short of the high threshold to establish such a claim.   To state a viable claim, he must plead facts showing: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Grimes v. District of Columbia*, 89 A.3d 107, 113-14 (D.C. 2014).  This standard only captures conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at 114.  By contrast, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not satisfy the high threshold of sufficiently "outrageous" conduct.  *Browning v. Clinton*, 292 F.3d 235, 248 (D.C. Cir. 2002).   "The requirement of outrageousness is not an easy one to meet."  *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994). "In the employment context," in particular, D.C. courts "traditionally have been demanding in the proof required to support an [IIED] claim."  *Browning*, 292 F.3d at 248 (quoting *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997)).

In his complaint, Rosendahl relies on two alleged incidents: (1) after his termination meeting, Stoel Rives purportedly did not allow him to return to his office to retrieve his glasses and cell phone without a security escort; and (2) Rosendahl's former assistant allegedly neglected to make a New York hotel reservation in connection with his wife's surgery, scheduled for a few

---

[9] As explained, Rosendahl was terminated on December 6, 2016 (not 2017, as he wrongly alleges).  (*Supra* at 2 n.2.)

days after his termination.  (Compl. ¶¶ 33-36.)  Even treating these allegations as true, they fall

short of alleging sufficiently "outrageous conduct" necessary to sustain an IIED claim.  For one,

it is common practice—and hardly "outrageous"—for employers to arrange escorts for terminated

employees who are collecting personal property.  And as to the allegation that a Stoel Rives

employee failed to make a hotel reservation in New York, that is similarly insufficient, particularly

since Rosendahl does not allege that he was unable to book his own room in New York—where

there is no shortage of lodging options—or that his wife's procedure was somehow affected.

Rather, these allegations are the sorts of "employer-employee conflicts" that are not outrageous as

a matter of law.  *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 255 (D.C. Cir. 2008); *Paul v. Howard

Univ.*, 754 A.2d 297, 307 (D.C. 2000) (finding allegations that employer "wrongfully denied

[plaintiff] tenure, reassigned her students and grants, requested that she vacate her office ..., and

otherwise discriminated against her" to be inadequate); *Hancock v. Wash. Hosp. Ctr.*, 908 F. Supp.

2d 18, 28 (D.D.C. 2012) (similar, based on allegations that employer failed to accommodate

disability and made purportedly nasty remarks related to termination).  Accordingly, because

Rosendahl does not (and cannot) allege actionable outrageous conduct, the Court should dismiss

his IIED claim.

### 4.     Rosendahl Fails To Allege A Viable Conversion Claim.

Rosendahl's "conversion" theory (*see* Compl. ¶¶ 39-69) also fails to state a plausible claim

for relief.  District of Columbia law defines the tort of conversion as "an unlawful exercise of

ownership, dominion, and control over the personalty of another in denial or repudiation of his

right to such property."  *Wash. Gas Light Co. v. Pub. Serv. Comm'n of Dist. of Columbia*, 61 A.3d

662, 675 (D.C. 2013) (quoting *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C.

2011)).  Importantly, governing D.C. law limits conversion claims in two key respects.  First, the

District does not recognize a cause of action for alleged conversion of intangible property.  *3D*

*Glob. Sols., Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 10 (D.D.C. 2008).  Second, money can only be the subject of a conversion claim "if the plaintiff has the right to a specific identifiable fund of money."  *Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 251-52 (D.D.C. 2016) (quoting *McNamara v. Picken*, 950 F. Supp. 2d 152, 176 (D.D.C. 2013)).  Rosendahl's conversion claim founders on both of these principles.

Rosendahl alleges that Stoel Rives converted his "origination credit, hours, and execution responsibility" in connection with a particular client.  (Compl. ¶ 69.)  To be clear, the Firm wholly disputes the notion that it converted *anything* from Rosendahl.  But for present purposes, the sort of intangible interest that Rosendahl identifies—*i.e.*, his alleged origination credit and responsibility—falls beyond the ambit of a viable conversion claim under D.C. law.  *3D Glob. Sols., Inc.*, 552 F. Supp. 2d at 10.  Otherwise, even if construed as a claim alleging the conversion of some financial benefit, his theory would still fail because Rosendahl does not allege, nor could he, that he is entitled to any "specific identifiable sum of money."  *Headfirst Baseball LLC*, 168 F. Supp. 3d at 251-52; *see also McNamara*, 950 F. Supp. 2d at 195 (dismissing conversion claim where plaintiff failed to identify the exact funds that partnership misappropriated); *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 176 (D.D.C. 2013) ("Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money.  A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money."); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 833 n.3 (Md. 2004) ("As a general rule, money … is not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds.").  Accordingly, Rosendahl's conversion claim should be dismissed for failure to state a claim.

### 5.    Rosendahl's Fraud Allegations Fail To State A Claim.

Rosendahl's fraud claim (Compl. ¶¶ 70-80) fails to a state a viable claim for relief, too.  In

keeping with Fed. R. Civ. P. 9(b), "[f]raud claims are subject to rigorous requirements, both in terms of the necessary elements and the heightened standard to satisfy those elements." *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 49-50 (D.D.C. 2010). Under D.C. law, "'[t]he essential elements of common law fraud are: (1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.'" *Atraqui v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977)). Here, Rosendahl fails to allege at least two of these necessary elements: knowledge and reliance.

Rosendahl's complaint seemingly identifies two purportedly fraudulent promises by Stoel Rives. First, he alleges that Stoel Rives' Managing Partner "promised to provide [Rosendahl] a plan for [Rosendahl's] integration that would ensure [his] continuing role" with a specific client. (Compl. ¶ 73.) Second, Rosendahl alleges that Mark Morford agreed to confer on Rosendahl two-thirds of the origination credit for the same client. (*Id.* ¶ 76.) These allegations in no way support a fraud claim. And even if they could, Rosendahl fails to assert any facts alleging that Stoel Rives had *knowledge* that its purported representations were allegedly false at the time they were made, or how Rosendahl took any *action in reliance* upon those purported representations.

Under even basic pleading standards—not to mention the "heightened" pleading requirements that apply under Fed. R. Civ. P. 9(b), *see, e.g.*, *Kowal*, 16 F.3d at 135-36— Rosendahl's failure to aver, even generally, these two required elements dooms his fraud claim from the start. *Ihebereme*, 730 F. Supp. 2d at 49-50 (dismissing fraud claim where plaintiff did not allege facts showing knowledge of falsity); *Bennett*, 377 A.2d at 60-61 (holding that a representation as to future events should only be considered a misrepresentation where the promisor had knowledge that the events would not occur); *see also Samuel v. Wells Fargo & Co.*,

-- F. Supp. 3d --, No. 17-cv-2539, 2018 WL 1997267, at *5 (D.D.C. Apr. 27, 2018) (dismissing claim where plaintiff failed to allege the "fundamental element" of reliance); *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 31 (D.D.C. 2014) (dismissing claim for failure to plead the "critical element" of reasonable reliance to plaintiff's detriment on the defendant's conduct); *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 276 (D.D.C. 2011) (dismissing fraud claim despite plaintiff's allegation of reliance because plaintiff failed to offer any factual basis to substantiate her own conclusions).  For at least these reasons, Rosendahl fails to state a plausible fraud claim, and that count should be dismissed.

### 6.      Rosendahl Fails To Allege A Plausible Breach-of-Contract Claim.

Rosendahl's 3-paragraph breach-of-contract claim (Compl. ¶¶ 81-83) fails to plausibly allege sufficient facts to state a viable theory for relief.  "To state a claim for breach of contract under District of Columbia law, a plaintiff must allege (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) breach of that obligation or duty, and (4) damages caused by that breach."  *Haynes v. Navy Fed. Credit Union*, 825 F. Supp. 2d 285, 290 (D.D.C. 2011) (citing *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 187 (D.C. 2009)). Importantly, as courts routinely recognize, "one cannot breach a contract without breaching a particular obligation created under the contract." *Id.* (quoting *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 54-55 (D.D.C. 2010)); *see also Hajjar-Nejad v. George Wash. Univ.*, 802 F. Supp. 2d 166, 174-75 (D.D.C. 2011) (dismissing breach-of-contract theories that failed to allege, among other things, that any contract "imposed specific obligations or duties" or how the defendant allegedly "breached those specific obligations or duties").

In his complaint, Rosendahl alleges only that the Firm "did not fulfill the intended purpose of [his] employment agreement."  (Compl. ¶ 82.)  That assertion is wrong, and in any event, the type of conclusory, generalized allegation that Rosendahl sets forth does not suffice to state a

breach-of-contract claim.  Rosendahl fails to allege any *specific* or *particular* obligation that the Firm purportedly owed him under his employment agreement, let alone that the Firm allegedly breached any such *specific* or *particular* obligation.  Otherwise, insofar as Rosendahl alleges that the Firm breached an engagement agreement with one of its clients, that theory fares no better.  For one, Rosendahl does not (and cannot) allege that he was a party to that contract, and his conclusory assertion of third-party beneficiary status cannot cure that issue.   At most his allegations suggest he may have been an *incidental* beneficiary of the Firm's engagement contract, but hardly an *intended* beneficiary, as required to confer on him the ability to sue on that agreement.  *See, e.g.*, *Corp. Sys. Res. V. Wash. Metro. Transit Auth.*, 535 F. Supp. 2d 60, 70 (D.D.C. 2014) (explaining that a "party that incidentally benefits from contractual provisions to which it is not a party is not a third-party beneficiary").   Further, even setting that issue aside, Rosendahl fails to allege that the agreement imposed any *specific* or *particular* obligation in terms of the Firm's treatment of Rosendahl that was allegedly breached.  Because Rosendahl fails to plausibly allege a viable breach-of-contract claim, this count should be dismissed.

### 7.   Rosendahl Fails To State An Actionable Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

Rosendahl's claim for breach of the implied covenant of good faith and fair dealing (Compl. ¶¶ 84-88) is equally subject to dismissal.  First, inasmuch as Rosendahl alleges that the Firm failed to adhere to the employment agreement—which, again, are allegations pled in fatally conclusory terms—that theory is duplicative of his other claims and thus not independently viable. *See Xereas v. Heiss*, 933 F. Supp. 2d 1, 7-8 (D.D.C. 2013) ("[B]reach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under [an] established cause of action.") (second alteration in original); *Capitol Justice, LLC v. Wachovia Corp.*, No. 07-cv-2095, 2008 WL 11388566, at \*7 (D.D.C. June 11, 2008).  Second,

Rosendahl's remaining allegations appear to relate to the Firm's activities in connection with his termination—allegedly "negotiating an illusory promise to assist Plaintiff's relocation," and purportedly refusing to allow him "21 days to consider a settlement offer."  Those assertions are false, but even accepting the allegations as true for purposes of Rule 12(b)(6), neither arises in the context of a valid contract, which is a prerequisite to a claim for breach of the implied covenant. *See Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009); *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 275 (D.D.C. 2009) ("The breach of the duty of good faith and fair dealing must necessarily arise out of the performance or *enforcement of the contract*, not out of the contract negotiations.") (emphasis added).  Rosendahl fails to allege any contract related to his departure from the Firm—because there was none executed—and thus any implied-covenant theory based on those allegations necessarily fails.

## 8.   Rosendahl Fails To Allege A Viable Defamation Claim.

Rosendahl's "defamation" claim (Compl. ¶¶ 89-91) also fails.  To establish a claim for defamation under District of Columbia law, he must prove: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) that either the statement was actionable as a matter of law irrespective of special harm or its publication caused the plaintiff special harm." *Klayman v. Segal*, 783 A.2d 607, 613 n.4 (D.C. 2001).  "To qualify as defamation, a statement must cause the plaintiff to appear 'odious, infamous, or ridiculous'; [c]omments that are 'unpleasant or offensive' are insufficient." *Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 221 (D.D.C. 2004).  And, of course, "[t]ruth is an absolute defense to defamation claims." *Id.* (citing *Olinger v. Am. Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969)).

Here, Rosendahl's defamation claim rests on his belief that Stoel Rives "spread the word of [his] termination" to other firms where he might apply.  (Compl. ¶¶ 27, 30.)  The Firm did no such thing.  But even accepting his allegations as true, those communications could not give rise to a defamation claim as a matter of law because they would be true—Rosendahl was terminated, and he admits the same throughout his complaint.  *See, e.g.*, *Benic*, 357 F. Supp. 2d at 223 (dismissing defamation claim based on allegation that plaintiff was "fired … because he was a bad manager" on similar grounds).

Otherwise, Rosendahl later alleges—in the most generalized of terms—that "the Firm professionally disparaged and defamed [him] with a key client that Plaintiff had been instrumental in bringing into the Firm, both before and after Plaintiff had departed from the Firm, as well as a key client prospect as well as with a law firm or law firms that the Firm knew were Plaintiff's prime relocation prospects."  (Compl. ¶ 90.)  These allegations—which are equally fictional—are also insufficient for several reasons.  First, to the extent Rosendahl alleges such events occurred "before" he "departed from the Firm" in December 2016, the claims are time-barred by the one-year statute of limitations governing defamation claims.  *See* D.C. Code. § 12-301(4); *Samuel*, 2018 WL 1997267, at *7 (dismissing defamation claims as time-barred where the statements were made more than one year before the case was filed); *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296 (D.C. 2001) (affirming dismissal of defamation claim as time-barred where plaintiff filed suit one year and three days after the defamatory statements were published)

Second, insofar as Rosendahl is relying on alleged statements that post-date his separation, those allegations are far too nonspecific to support a viable defamation claim under D.C. law. "Although the D.C. Circuit has not adopted a heightened pleading standard for defamation claims generally, courts have routinely held that a complaint alleging [defamation] must plead 'the time,

place, content, speaker, and listener of the alleged defamatory matter.' *Mattiaccio v. DHA Grp., Inc.*, 908 F. Supp. 2d 136, 138 (D.D.C. 2012) (citation omitted).  Rosendahl does nothing of the sort, which renders this aspect of his defamation claim insufficiently pled as a matter of law.  *See, e.g.*, *Stovell v. James*, 810 F. Supp. 2d 237, 248 (D.D.C. 2011) (holding that the plaintiff failed to adequately plead his defamation claim where he "failed to identify any of the specific statements" he alleged were defamatory).

## 9.   District Law Does Not Recognize A Civil "Extortion" Claim.

Rosendahl's "Extortion" claim (Compl. ¶¶ 92-93) must be dismissed because District of Columbia law does not recognize a civil claim for extortion.  *Fischer v. Estate of Flax*, 816 A.2d 1, 5 (D.C. 2003) (affirming dismissal of "extortion" claim as legally insufficient after finding "no law … recognizing a civil cause of action for extortion in this jurisdiction"); *Daskalea v. Wash. Humane Soc'y*, 480 F. Supp. 2d 16, 39 (D.D.C. 2007) ("[T]he District of Columbia does not recognize a civil cause of action for extortion.").

## 10.   Rosendahl Fails To Allege A Viable Hostile Work Environment Claim Under The D.C. Human Rights Act.

Through his "hostile workplace" claim (Compl. ¶¶ 94-98), Rosendahl presumably seeks relief under the DCHRA, which provides a cause of action against an employer that creates or condones a discriminatory hostile work environment.  This claim fails for several reasons.

First, like Rosendahl's age discrimination claim under the DCHRA, this claim would be time-barred by the DCHRA's statute of limitations, given that his employment with the Firm was terminated more than one year before he filed his complaint.  (*See supra* § II.B.2.)

Second, even if the claim were not time-barred, Rosendahl fails to plead sufficient allegations to give rise to an actionable hostile work environment claim.  "To state a claim for … hostile work environment, [a plaintiff] must plead facts sufficient to show he suffered harassment

because of his membership in a protected class and that [the employer] knew or should have known of the alleged harassment and failed to take remedial action." *King v. Pierce Assocs., Inc.*, 601 F. Supp. 2d 245, 248 (D.D.C. 2009) (citing *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122-23 (D.C. Cir. 2002)).[10]   Under this standard, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).   Rather, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult … sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).   Equally important, "plaintiffs are required to establish a causal connection between the harassment and their protected [status] to succeed on the claim." *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012); *Clemmons v. Acad. for Educ. Dev.*, 70 F. Supp. 3d 282, 295 (D.D.C. 2014).

Applying these standards here, Rosendahl's allegations fall short of a viable hostile work environment claim.   Fairly construing the complaint, Rosendahl's "hostile workplace" claim is premised on the following allegations: (1) Stoel Rives reportedly crediting the account of a female partner regarding a "law firm reception conversation," despite her allegedly saying that Rosendahl's comments were abusive "coming from an older white male"; (2) Stoel Rives' allegedly conducting a "behind-the-scenes Soviet-style 'Inquisition'" into the same exchange, and purportedly proclaiming Rosendahl "a drunken bigot" as a result; and (3) the Firm reportedly not allowing Rosendahl to pitch a potential client.   (*See* Compl. ¶¶ 96-98.)   These isolated and discrete allegations, even if true, could not establish that Rosendahl was subjected to "severe or pervasive" conduct that "permeated" the workplace.   Courts within this District have dismissed hostile work

---

[10] Although *King* analyzed a hostile work environment claim under Title VII, D.C. courts look to Title VII cases in evaluating DCHRA claims.  *See, e.g.*, *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 92 n.6 (D.D.C. 2010).

environment claims that have alleged far more than Rosendahl asserts here.  *See, e.g.*, *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 104 (D.D.C. 2010) (dismissing claim where plaintiff was placed on administrative leave due to a false accusation, his accent was criticized, he was told he was easy to replace with an American, and he was told that his supervisor would not hire other Africans); *Johnson v. Dist. of Columbia*, 572 F. Supp. 2d 94, 109-110 (D.D.C. 2008) (dismissing claim where plaintiff alleged he was not given a promised pay increase, his responsibility was reduced, he was told he was "out of order" in inquiring about his reassignment of duties, and he was constantly ridiculed).

Finally, Rosendahl makes no effort to allege any conceivable connection between the alleged acts and his age (or any other protected characteristic under the DCHRA).  The complaint simply characterizes the alleged affronts as "hostile," without any suggestion that the purported conduct was remotely age-related or discriminatory.  This shortcoming provides an independent basis to dismiss his hostile workplace claim.  *Hunter v. Dist. of Columbia*, 797 F. Supp. 2d 86, 93-94 (D.D.C. 2011) (dismissing claim because, among other things, plaintiff failed to "allege facts that would plausibly suggest the necessary connection between the events he finds abusive and his membership in a protected class"); *Badibanga*, 679 F. Supp. 2d at 104 ("[A]llegations that are unrelated to [plaintiff's] race/ethnicity, such as his allegations that he was disciplined when others were not and that he was falsely accused of being rude, cannot support a claim for hostile work environment."); *Kelley v. Billington*, 370 F. Supp. 2d 151, 157 (D.D.C. 2005) (holding that to sustain a hostile work environment claim, the plaintiff must show he was discriminated against because of his status).

For all these reasons—or any one of them alone—the Court should dismiss this count.

### 11.    Rosendahl Fails To Allege A Viable Retaliation Claim Under The D.C. Human Rights Act.

Rosendahl's retaliation claim (Compl. ¶¶ 99-102) is hardly a model of clarity, but construed in the context of his accompanying legal claims (*e.g.*, age discrimination, hostile workplace), it presumably sounds under the D.C. Human Rights Act.  This claim also fails.

First, any DCHRA-based retaliation claim would be equally time-barred by the DCHRA's one-year limitations period, just as with any other DCHRA claims.  (*See supra* § II.B.2.)

Second, even if the claim were timely (and it is not), Rosendahl fails to allege a viable claim on the merits.  In this respect, the DCHRA makes it unlawful "for an employer to retaliate against an employee due to his … opposition to any practice made unlawful by the DCHRA."  *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 585 (D.C. 2001) (citing D.C. Code § 2-1402.61(a)).  To state an actionable claim, then, Rosendahl must set forth well-pled allegations that would establish: "(1) that []he engaged in statutorily protected activity, (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two."  *Fox v. Giaccia*, 424 F. Supp. 2d 1, 9 (D.D.C. 2006) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)).  Rosendahl's complaint falls short of this showing because he does not allege that he engaged in any protected activity covered by the statute.

Under the DCHRA, "an activity is 'protected' for the purposes of a retaliation claim if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment."  *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91 (D.D.C. 2006); *see also Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (explaining, in the context of a Title VII claim, that the employee's complaint allegedly prompting retaliatory conduct "must in some way allege unlawful discrimination").  Here, Rosendahl's complaint does not allege that he lodged any complaint of discrimination—or otherwise engaged

in any act that explicitly opposed alleged discrimination—that could serve as the predicate for a viable claim.  Without any well-pled allegations of any underlying protected activity, Rosendahl fails to state an actionable theory of retaliation under the DCHRA, and his claim must be dismissed.  *See, e.g.*, *Congress v. Dist. of Columbia*, 277 F. Supp. 3d 82, 89 (D.D.C. 2017) (dismissing retaliation claim, in part, where plaintiff's alleged "complaint"—that the District was allegedly forcing her to cover classes despite not having certification—was not related to protections of DCHRA, *i.e.*, "the right to employment free from discrimination"); *King v. Jackson*, 468 F. Supp. 2d 33, 38 (D.D.C. 2006) (similar), *aff'd*, 487 F.3d 970 (D.C. Cir. 2007); *cf. Brady v. Livingood*, 360 F. Supp. 2d 94, 101 (D.D.C. 2004) (similar).

### 12.    Rosendahl Fails To Allege A Viable RICO Claim.

Rosendahl's RICO claim (Compl. ¶ 103-04) is subject to dismissal because he fails to allege that any of the defendants engaged in even a single "predicate offense" under the statute, let alone any sort of "pattern of racketeering activity" necessary to pursue a civil RICO claim.

To state a civil claim under the RICO statute, Rosendahl must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1116 (D.C. Cir. 1991).  As the D.C. Circuit has explained, "[a] 'pattern of racketeering activity' requires commission of at least two predicate offenses on a specified list." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (citing 18 U.S.C. § 1961(1), (5)).  Applying this framework here, Rosendahl's complaint comes up short in at least two independent ways.

First, Rosendahl fails to allege that any of the defendants committed a "predicate offense," as the term "racketeering activity" is defined by the statute.  *See* 18 U.S.C. § 1961(1).  Such acts can include a "threat involving murder, kidnapping, gambling, arson, robbery, extortion, dealing in obscene matter, or dealing in a controlled substance"; various crimes that are indictable under

federal statutory law, such as bribery, forgery, economic espionage; and similar criminal acts.  *See id.*  But Rosendahl does not (and cannot) allege anything of the sort.  Rather, his single-sentence RICO claim is precisely the sort of conclusory allegation that cannot satisfy Rule 8: "Defendants conspired to commit the above actions and Defendant's conspiracy reflects a pattern and practice of conspiring to undertake such actions in express violation of 18 U.S.C. 96 ("RICO")."  (Compl. ¶ 104.)  At most, Rosendahl might point to his fraud allegations, but that theory would be a nonstarter because courts routinely hold that allegations of common-law fraud are insufficient to support a RICO claim.  *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445 (1st Cir. 1990) ("[A]cts of common law fraud that do not implicate the mails (or the wires) do not constitute 'racketeering activity' under the definition found within the RICO statute."); *Zolfaghari v. Sheikholeslami*, 943 F.2d 451, 454 (4th Cir. 1991) (similar).

Second, even if Rosendahl had alleged the requisite predicate act(s) of "racketeering activity" under the statute (and he has not), his claim would fail regardless because he certainly has not set forth allegations to show a "pattern of racketeering activity."  "The pattern requirement" serves the important goal of "help[ing] to prevent ordinary business disputes from becoming viable RICO claims."  *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001).  In turn, a plaintiff cannot pursue a RICO claim where the allegations rest on a "single scheme" with a "single discrete injury" to a "small number of victims." *Edmondson & Gallager*, 48 F.3d at 1265 ("We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim."); *accord W. Assocs. Ltd.*, 235 F.3d at 634; *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 100-01 (D.D.C. 2015) (similar).  Yet this is precisely what Rosendahl's allegations amount to here.  Even construing the allegations of his complaint liberally, he describes a "single scheme"

(an effort to allegedly oust him from Stoel Rives) that resulted in a "single [alleged] injury" (his ouster from Stoel Rives), with "few victims" (himself).  This can hardly amount to a "pattern of racketeering" activity under controlling precedent.

For both of these reasons—or either of them standing alone—Rosendahl fails to state a viable RICO cause of action, and that claim should be dismissed under Rule 12(b)(6).

### 13.    Rosendahl's "Joint and Several Claim" Is Improper.

In Paragraph 105 of the complaint, Rosendahl purports to invoke "joint and several" liability against all of the named defendants.  (Compl. ¶ 105.)  This is improper.  Rather, the Federal Rules make it incumbent on Rosendahl to identify which claims he pursues against which defendants, and to support those claims with well-pled allegations that plausibly establish an actionable legal theory against each.  His one-sentence, catch-all statement that purports to assert liability against all defendants for all claims is improper and should be dismissed.  *See, e.g.*, *Lopes v. JetSetDC, LLC*, 70 F. Supp. 3d 555, 562 (D.D.C. 2014) ("It is not enough merely to state joint and several liability, without pleading any facts indicative of such divisible legal responsibility."); *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 165 (D.D.C. 2016) (reiterating the need for a complaint to specify "how each defendant was involved in the many alleged violations claimed by plaintiffs").

### C.    Rosendahl Fails To State Any Actionable Claim Against Jenner Individually.

For the reasons set forth above, the Court should dismiss the entirety of Rosendahl's claims against both Stoel Rives and Jenner for failure to state a claim under Rule 12(b)(6).  But even if some aspect of Rosendahl's complaint were found to be viable against Stoel Rives (and none is), the Court should dismiss Rosendahl's claims against Jenner individually for lack of any plausible allegations that would render Jenner personally liable under any theory.

First, as to his age discrimination claim, Rosendahl does not allege that Jenner made the decision to separate his employment, nor could he, given that Jenner played no role in that decision. To the contrary, the complaint alleges that it was Moratzka—the Head of the Energy group in which Rosendahl was resident—who both scheduled his termination meeting and then carried out the termination by communicating the Firm's decision to Rosendahl on December 6, 2016. (Compl. ¶¶ 21-22.)  The complaint simply alleges that Jenner was "present," which is not sufficient to potentially trigger liability under the DCHRA.

Second, as to Rosendahl's IIED claim, he alleges simply that Jenner "refused to speak with [him]" when he tried to retrieve his personal items from the office and that Rosendahl was then accompanied by security when returning to the office.  But that allegation is no more outrageous as against Jenner individually, and it fails to state a claim.

Finally, Rosendahl's remaining claims make no mention of Jenner whatsoever, let alone through sufficiently plausible allegations that even come close to stating viable legal theories. Roesndahl's fraud and contract-based claims focus on his employment agreement and an engagement letter, and Jenner is not alleged to have had—and did not have—any involvement with those issues.  Rosendahl's defamation claim does not implicate Jenner in any sense, and his hostile-work environment and retaliation claims under the DCHRA are similarly devoid of any reference or allegations regarding Jenner.  Finally, Rosendahl's extortion, RICO, and "joint and several" claims fail against Jenner for the same reasons above.

In sum, because Rosendahl fails to assert any plausible allegations of fact regarding Jenner that would give rise to a claim for relief under any of his scattershot theories, the Court should at a minimum dismiss Plaintiff's claims against Jenner under Rule 12(b)(6).

## IV.     <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Dismiss.  Specifically, the Court should dismiss: (1) the entirety of Rosendahl's claims against the Out-of-Area Defendants (Moratzka, Quinby, Tellam, and Morford) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); (2) the entirety of Rosendahl's claims against Stoel Rives and Jenner for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated: August 1, 2018                                           Respectfully submitted,

/s/ Matthew J. Sharbaugh
Grace E. Speights (D.C. Bar No. 392091)
grace.speights@morganlewis.com
Matthew J. Sharbaugh (D.C. Bar No. 1009614)
matthew.sharbaugh@morganlewis.com
Kaiser H. Chowdhry (D.C. Bar No. 999082)
kaiser.chowdhry@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel:     (202) 739-3000
Fax:     (202) 739-3001

*Attorneys for Defendants* Stoel Rives, LLP,
Mark Morford, Bradley Tellam, Andrew
Moratkza, David Quinby, and Gregory Jenner

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of August 2018, a true and correct copy of the

foregoing has been served on the parties listed below via first-class mail:

Roger Rosendahl
1 Old Forge Road
Greenwich, CT 06830

*Plaintiff, pro se*

/s/ Matthew J. Sharbaugh
Matthew J. Sharbaugh, Esq

DB1/ 98843273